[File No. 6354]

McLAUGHLIN OIL COMPANY, a North Dakota corporation, Appellant v. FIRST STATE BANK OF BUFFALO, a corporation, Respondent.

(57 NW2d 860)

Opinion filed April 1, 1953

*Bangerl & Bangert,* for appellant.

*Nilles, Oehlert & Nilles* and *Wattam, Vogel, Vogel & Bright,* for respondent.

SATHRE, J. The plaintiff McLaughlin Oil Company is a North Dakota Corporation having its place of business in Enderlin, North Dakota. The defendant First State Bank of Buffalo is a state banking corporation having its place of business at Buffalo, North Dakota. Between March 8, 1950, and April 14, 1950, the plaintiff received from its customers three checks drawn on the defendant bank. One check was dated the 8th day of March, 1950, drawn by Fred Paul to F. J. Decker in the sum of $14.69 and by Decker endorsed to the plaintiff. The second check was drawn on April 11, 1950 by Lorne Nudell to the plaintiff in the sum of $96.32. The third check was drawn on the 14th day of April 1950 to the plaintiff by one John S. Haason in the sum of $11.22 payable to the plaintiff. The plaintiff deposited these three checks to its account in the People's & Enderlin State Bank, Enderlin, North Dakota. The People's & Enderlin State Bank transmitted these checks to its correspondent the First National Bank of Minneapolis for collection. The First National Bank of Minneapolis transmitted them by cash letter to the defendant bank at Buffalo. The defendant bank issued drafts for the checks and other checks drawn on its correspondent the Northwestern National Bank of Minneapolis and forwarded same to the First National Bank of Minneapolis, retaining 5 cents from each of the two smaller checks and 10 cents from the larger check as remittance charges or exchange. The First National Bank of Minneapolis either forwarded drafts for the amount of the checks less the exchange to the People's & Enderlin State Bank or gave it credit on its account with the said First National Bank of Minneapolis.

The People's & Enderlin State Bank credited the plaintiff with the amount of these checks less the amount of exchange which amounted to a total of 20 cents. The plaintiff brings this action to recover from the defendant the sum of 20 cents, being the items of remittance charges or exchange retained by the

defendant from the total amount of these three checks, and for an injunction perpetually enjoining and restraining the defendant from withholding from the plaintiff the sums of money due the plaintiff as part of the proceeds of checks drawn on said defendant bank by its depositors.

The defendant admits the issuance of the checks referred to, that they were deposited by the plaintiff to its account in the People's & Enderlin State Bank; that they were sent for collection to the First National Bank of Minneapolis and that said Minneapolis Bank forwarded the same by cash letter to the defendant bank at Buffalo and that the defendant charged the amount thereof to the account of the drawers and made remittance by draft to the Minneapolis Bank for the amount of said checks less the exchange charged as set forth. The defendant further alleges that for many years last past and continuing up to the present time the only duty of the defendant with respect to cashing checks drawn upon it by its customers has been and now is to cash such checks as and when presented to it at its counter in its banking house at Buffalo, North Dakota, and that no duty existed to transmit the proceeds of said checks either by mail or draft or by any other means of transmission; that during said period of time the custom practice and usage in said bank and other banks similarily situated has been, that when checks are sent in by mail, and request is made to cash said checks and remit the proceeds by draft, a reasonable charge is made for services rendered in the transmission of the moneys in the form requested by the legal holder of such checks; the answer further alleges that by Section 2, Chapter 71 of the 1933 Session Laws as amended (Section 6–0104 1949 Supp NDRC 1943) the State Banking Board was granted power to make rules and regulations not inconsistent with the laws of the State of North Dakota and of the United States; that pursuant to such rule-making power under said statute, said banking board formulated rules fixing maximum charges for services rendered in remitting on account of checks and other items received through what are commonly known as cash letters in accordance with a schedule prepared and approved by said banking board.

The checks involved here, the plaintiff's signature card and deposit slips showing the deposit of these checks by the plaintiff, the letter of transmittal by the Enderlin Bank to the First National Bank of Minneapolis, and the usual form of cash letters from the latter bank to the defendant, were admitted in evidence as exhibits.

The case was tried before the Honorable John C. Pollock, Judge of the District Court of Cass County, North Dakota on the 22nd day of December 1950. After due hearing the district court ordered judgment in favor of the defendant for the dismissal of plaintiff's cause of action and for its costs and disbursements, and judgment was entered accordingly. From this judgment the plaintiff has appealed and demands a trial de novo.

The plaintiff contends that there is a relationship of agency beween the plaintiff and the People's & Enderlin State Bank and the plaintiff and the First National Bank of Minneapolis as a subagent; that knowledge of this agency is imputed to the defendant by the provision of Sec 6–0368 NDRC 1943. The plaintiff further contends that when the checks arrived at the defendant bank, the said bank received them from an agent of the plaintiff and took them into its custody as an agent of the makers of the checks; that the relationships which are by law presumed to exist between the plaintiff and the makers of the checks are actually or constructively within the knowledge of the maker's agent the defendant, and that when the defendant remitted to the plaintiff's agent the First National Bank of Minneapolis it was obligated to remit either in money or by a good draft the full amount of each of the checks.

The defendant contends however, that the question as to whether the relationship of agency existed between the defendant and the holder of the checks in question is immaterial, and that the issue in this case is whether under the facts and the applicable statutes the plaintiff has a cause of action against the defendant.

The state banks of this state are governed by Chapter 6 NDRC 1943 known as Banks and Banking. Sec 6–0101 of said Chapter provides:

"The State Department of Banking shall be known and designated as the Banking Department and shall be under the management and control of the state banking board and the chief officer designated and known as the state examiner, shall have charge of the execution of all laws relating to state banks, savings banks and trust companies . . . banking institutions and other financial corporations, exclusive of the bank of North Dakota."

"Sec 6–0104 NDRC 1943 provides: "the (banking) board shall have the power to make, such rules and regulations for the government of financial corporations mentioned in section 6–0101 as in its judgment may seem wise and expedient, but such rules and regulations shall not conflict with any law of this state or of the United States. The board shall review all reports made by the financial corporations and institutions under its jurisdiction and all reports of regular and special examinations thereof made by the state examiner, and shall approve or disapprove such reports. The board shall make and enforce such orders as, in its judgment, may be necessary or proper to protect the public and the depositors or creditors of said financial corporation and institution."

On April 5, 1944 the state banking board of North Dakota, acting under the authority granted by section 6–0104, supra, adopted certain regulations governing bank exchange, which regulations have ever since been in full force and effect. A certified copy of said regulations was introduced in evidence as defendant's exhibit A. The pertinent portions of said regulations affecting the present action read as follows:

"Regulation III. Now, therefore under authority granted by Section III Chapter 71 of 1933 Session Laws of the State of North Dakota (Sec 6–0104 NDRC 1943 Amended by Sec 6–0104 1949 Supp NDRC 1943). The following is hereby adopted as the order and regulation of the State Banking Board of the State of North Dakota.

From and after May 1, 1944 no state bank organized and operating under the laws of the State of North Dakota shall charge, deduct, or otherwise collect exchange fees on checks

or other cash items received in the regular course of business from other banks or trust companies within or without the state for collection and remittance or collection and credit in excess of the amounts set forth in the following schedule; provided however that this order and schedule shall apply only to items received in what is commonly known as regular 'cash letters'; and shall not be construed to apply to bills of lading, sight drafts or other items requiring special handling.

Schedule: On items of $1.00 or under, no charge

On items of $1.01 to $10.00 not to exceed 5¢ per item.

On items of $10.01 to $100.00 not to exceed 10¢ per item.

On each item of over $100.00 not to exceed 10¢ for each $100.00 or fraction thereof per item provided that the maximum charge for any one item shall not exceed $1.00".

There is no statute in this state requiring banks to clear all checks at par. The only statute that has any reference to par clearance is Sec 6-0913 NDRC 1943. It provides that:

"All checks and other instruments and items of exchange payable on demand sent by the Bank of North Dakota to any state bank or banking association in North Dakota, for collection, shall be remitted for at par by such state bank or banking association to the Bank of North Dakota."

It was amended by Chapter 112 of the Session Laws of 1949 and now reads as follows:

"All checks and other instruments and items of exchange issued in payment of public bills to the State of North Dakota and its political subdivisions or any department of either, sent by the Bank of North Dakota to any state bank or banking association for collection, shall be remitted for at par by such state bank or banking association to the Bank of North Dakota if good on the day presented."

Under the provision of Sec 6-0913 as it existed prior to 1949 all checks and other instruments and items of exchange payable

on demand sent by the Bank of North Dakota to any state bank or banking association in North Dakota for collection had to be remitted for at par by such bank or banking association to the Bank of North Dakota. But the 1949 amendment limited par clearance only to checks and other instruments and items of exchange issued in payment of public bills to the State of North Dakota and its political sub-divisions or any department of either sent by the Bank of North Dakota to any state bank or banking association. It is clear that under the provisions of said Sec 6–0913 as it existed prior to 1949 and under the provisions of the amendment of 1949, the subject of par payment was before the legislature; and had it intended that all checks should be cleared at par it could have so provided in the enactment of this statute or in the 1949 amendment thereto. At no time did this statute provide that all checks and other instruments and items of exchange should be paid at par by the state banks. It specified the kind of instruments that were to be paid at par, and only when they were sent to other banks from the Bank of North Dakota. The language of the original statute as well as of the amendment is clear and specifies the particular checks and other instruments to be cleared at par. It would follow that all other checks and instruments not mentioned therein were excluded, and that the rule of statutory construction—"Inclusio unius est exclusio alterius"—would apply in ascertaining the legislative intention. There would be no necessity for enactment of said Section 6–0913 or any amendment thereof had there been any other statute providing for par clearance.

It is of interest to note here that a bill was introduced in the legislative session of 1947 which would prohibit state banks from charging exchange but which failed to pass, and at the general election in November 1952, before this case was argued in this court the electors of the state rejected an initiated measure which would have prohibited state banks from charging exchange.

There is therefore no law in this state requiring state banks to clear checks at par, other than as provided in and limited by Section 6–0913 supra.

Section 1–0106 NDRC 1943 provides:

"In this state there is no common law in any case where the law is declared by the code."

The common law is therefore adopted by statute as the basic law applicable to civil rights and remedies not defined by the statute. Reeves & Co. v. Russell, 28 ND 265, 148 NW 654, LRA 1915D 1149. Where there is no express constitutional or statutory declaration upon the subject the common law is applied. Brignall v. Hannah et. al., 34 ND 174, 157 NW 1042.

Vest. The Par Collection System of the Federal Reserve Banks Feb. 1940. Federal Reserve Bulletin 89 states:

"Under the common law (i. e. in the absence of statute or agreement to the contrary), a bank is obligated to pay in cash checks drawn upon it when presented at the bank, but is not obligated to remit the proceeds to distant places. When checks were sent in through the mails from distant places, therefore, it was generally felt that the banks in remitting the proceeds in cash to such places performed a service which they were not obligated to perform and for which they were entitled to compensation. It was for this service that they deducted the so-called 'exchange charge' ".

In its brief plaintiff quotes extensively from 30 Virginia Law Review page 603, and 2 Zollman Banks and Banking, page 262, note 6. These quotations discuss in a general way the origin of exchange charges and their merits and demerits. We cannot see however that this discussion can have any bearing upon the issues in the instant case. The issues in this case must be decided in accordance with the laws of the state governing banks and banking.

The plaintiff contends that under Sec 6–0368 NDRC 1943 it is entitled to damages on account of defendant's failure to remit the full amount of the checks involved in this action, and that such statute clarifies the duties and responsibilities of the various agencies concerned with the issuance and collection of the conventional bank checks. Said section reads as follows:

"Any bank doing business in this state, including the Bank of North Dakota, which shall cash, receive for application on an obligation, or for collection or deposit and credit, any check,

note, or other negotiable instrument drawn upon or payable at any other bank, savings bank, trust company, or financial institution located in another city or village or which should be presented for acceptance or payment in another city or village, whether within or without this state, at its option, may forward such instrument for presentment or collection directly to the bank on which it is drawn, or at which it is made payable, or may forward it through the Federal Reserve Bank, or other recognized banking agencies, and in payment of such collection, such bank or other agency may accept the exchange or a draft of the collecting or payor bank. Such method of collection, in the absence of a special agreement to the contrary, shall be deemed to be agreed to by the parties, and the forwarding bank and successive agencies shall not be liable to the owner or depositor until actual final payment is received by the collection of such exchange or draft, and until such final collection, the depositor, endorser, guarantor, or surety of any check, draft, or other instrument so received, deposited, cashed, or credited, shall be liable to the bank to the extent of any money paid out or credit given by it on account of such instrument. However, the bank and every other agency through whose hands such instrument or the proceeds thereof shall pass shall be charged with ordinary business care, and shall be liable for any lack thereof, or for any default or negligence on its part resulting in loss, but not for the default, negligence, or lack of care of any other agencies, and the owner or depositor of such instrument shall have a cause of action directly against such bank, or other agencies, for his damage or loss on account of its default or lack of ordinary care.

We find nothing in the quoted section which either forbids or permits banks to charge exchange in remitting for checks received in cash letters. The statute does provide that whatever method of collection provided for in said statute selected by the remitting bank, in the absence of a special agreement to the contrary, shall be deemed to be agreed to by the parties, and the forwarding bank and successive agencies shall not be liable to the owner or the depositor until actual final payment is received by the collection of such exchange or draft.

The treasurer of the plaintiff testified that he did not know that exchange had been charged on checks drawn by customers of the defendant bank and in favor of the plaintiff and by such plaintiff deposited to its account in the Enderlin bank. With reference to the checks in question he stated that he first knew that exchange had been charged some time prior to August 1950; that when checks are received he deposits them in the bank and that he writes part of the checks issued by plaintiff; that he does not check the bank account to see if exchange charges are deducted from it. This he said was done by his father who was unable to be present at the trial because of illness. There is no allegation and no proof that plaintiff protested or objected to exchange charges made by defendant at any time during the course of such business transactions.

J. W. Chapman, president of the defendant bank testified that his bank had charged exchange on checks received by it in cash letters ever since its organization in 1942, and continued to make such charges in accordance with the schedule fixed by the State Banking Department in 1944; that the cash letters with checks drawn on defendant bank were received from the First National Bank of Minneapolis practically every business day; that remittance in payment of these checks were made by draft on the Northwestern National Bank of Minneapolis, less the exchange; that at no time did the First National Bank of Minneapolis or the plaintiff protest or object to the deduction of the exchange charges, and specifically that no protest was made with reference to the particular checks involved in this action.

Plaintiff cites the Nebraska case of Placek et. al. v. Edstrom, 148 Nebraska 79, 26 NW2d 489, 174 ALR 856, in support of its cause of action. The Nebraska case was brought for the purpose of obtaining a declaratory judgment to construe a statute which specifically provided that checks drawn on any bank or trust company organized under the laws of the state should be cleared at par by the bank or trust company on which they were drawn. The plaintiffs in that case contended that the statute was repugnant to Section 14, Art. 3 Constitution of Nebraska, and also that it was repugnant to Section 10, Art. 1, Constitution of the United States, in that it impaired the obli-

gation of contract; and that the act was repugnant to Section 3, Art. 1, Constitution of Nebraska, and Section 1 of the 14th Amendment to the Constitution of the United States respectively, in that it deprived plaintiffs of property without due process of law and denied them the equal protection of the law. The supreme court of Nebraska held that in the light of the situation the Act in question was an entirely reasonable exercise of the police power of the state and was not repugnant either to the Constitution of Nebraska or to the Constitution of the United States.

.Since we have no statute in this state like the Nebraska statute, or any similar statute, the decision in the Nebraska case is not in point and has no application to the issues in the case at bar.

The plaintiff also cites the case of Farmers and Merchants Bank of Monroe v. Federal Reserve Bank of Richmond, Virginia, 262 US 649, 67 L ed 1157, 43 S Ct 651, 30 ALR 635, North Carolina had enacted a statute authorizing banking institutions chartered by the state to charge a fee not in excess of $\frac{1}{8}$ of 2% on remittances covering checks, the minimum fee on any remittance therefor to be 10 cents. It exempted checks drawn in payment of obligations to the Federal or State government. The enactment of this statute arose out of the effort of the Federal Reserve Board to introduce in the United States universal par clearance and collections of. checks through Federal Reserve Banks. The State of North Carolina was in the district served by the Federal Reserve Bank of Richmond. When this statute was enacted the Federal Reserve Bank of Richmond gave notice that it considered the legislation void under the federal constitution; that when presenting checks to North Carolina state banks for payment over the counter, it would refuse to accept exchange drafts on reserve banks, as required by the North Carolina statute and that it would return as dishonored checks for which only exchange drafts had been tendered in payment. The Farmers & Merchants Bank of Monroe and eleven other state banks brought action to enjoin the Federal Reserve Bank of Richmond from continuing such practice. The plaintiffs were not members of the Federal Reserve System. The trial

court granted a perpetual injunction. The supreme court of North Carolina reversed the decree. The case was carried to the supreme court of the United States by certiorari. That court reversed the decision of the supreme court of North Carolina and reinstated the decision of the trial court.

In the opinion written by Justice Brandeis, the court said:

"It (par clearance) deals not with charges for collection, but with charges incident to paying. It deals with exchange. Formerly, checks, except where paid at the banking house over the counter, were customarily paid either through a clearing house or by remitting, to the bank in which they had been deposited for collection, a draft on the drawee's deposit in some reserve city. For the service rendered by the drawee bank in so remitting funds available for use at the place of the deposit of the check, it was formerly a common practice to make a small charge, called exchange, and to deduct the amount from the remittance. This charge of the drawee bank the Federal Reserve Board planned to eliminate, and, in so doing, to concentrate in the twelve Federal Reserve Banks, the clearance of checks and the accumulation of the reserve balances used for the purpose. The board began by efforts to induce the banks to adopt par clearance voluntarily. The attempt was not successful. The board then concluded to apply compulsion."

The opinion concluded:

"The North Carolina statute here in question does not obstruct the performance of any duty imposed upon the Federal Reserve Board and the Federal Reserve Banks. Nor does it interfere with the exercise of any power conferred upon either. It is therefore consistent with the Federal Reserve Act and with the Federal constitution."

Plaintiff cites the case of Brookings State Bank v. Federal Reserve Bank of San Francisco, 281 Fed 222. The decision in that case supports the contention of the defendant rather than that of the plaintiff. The plaintiff in that case, the Brookings State Bank, was a banking corporation in the State of Oregon. The defendant Federal Reserve Bank of San Francisco, seeking to make collections from the plaintiff without the necessity of paying exchange maintained an agent at Brookings for making

collections over the counter of such paper as might be transmitted to him in cash letters from the Reserve Bank and its branch bank at Portland. The agent was so maintained for about a year and he collected over the counter during the time something above $108,000.00 at an expense to the Reserve Bank of $3,542.00, which included the expense of transmitting the currency to the point of destination. This method caused the Brookings Bank much annoyance, and required it to maintain a materially larger reserve than ordinarily necessary in the usual conduct of its business.

The agent was withdrawn and the Brookings bank was notified that thereafter checks would be forwarded for collection by mail direct to the bank with request that it pay at par and the proceeds remitted by exchange on Portland or San Francisco. Checks so forwarded were endorsed, "pay to Brookings State Bank for collection only and remittance in full without deduction for exchange or collection charges."

These checks were returned without payment on the ground that the bank was not required to act as agent for the Reserve Bank to make such collections under the terms imposed. The plaintiff Brookings State Bank then brought action to enjoin the Reserve Bank from continuing such practice and after hearing a preliminary injunction was granted. Later the injunction was made permanent. 281 Fed 222. We quote the following from the opinion of the District Court.

"The nonmember banks, being without the pale of the Federal Reserve Act, have the right, if they see fit, to charge reasonable exchange on remittances. This is a right the bank may relinquish at its option, but it ought not to be coerced into doing so, or agreeing to do so, and any strategy which has for its purpose the coercion of such nonmember bank to yield its legal right in this respect is unlawful and will not be approved by the courts."

It is established by the record that the defendant has charged exchange over a period of years on checks drawn on its customers to the plaintiff as payee. The exchange thus charged was in conformity with the schedule adopted by the State Banking Board of the State of North Dakota in 1944. There is no showing, nor do we find that the schedule prepared by the state

banking board conflicts in any way with the laws of the State or with the laws of the United States.

Section 342 of the Federal Reserve Act, USCA 12, page 723, contains a proviso which permits nonmember banks to make a reasonable charge for collection or payment of checks and drafts and remission therefor or by exchange or otherwise. Such proviso reads as follows:

"Provided further, that nothing in this or any other section of this chapter shall be construed as prohibiting a member or nonmember bank from making reasonable charges, to be determined and regulated by the Board of Governors of the Federal Reserve System, but in no case to exceed 10 cents per $100 or fraction thereof, based on the total of checks and drafts presented at any one time, for collection or payment of checks and drafts and remission therefor by exchange or otherwise; but no such charges shall be made against the Federal reserve banks."

We have carefully examined and considered the facts and circumstances presented by the record in this case and the law applicable thereto and we are agreed that the plaintiff has failed to establish a cause of action against the defendant.

The judgment of the district court is affirmed.

MORRIS, C. J., and CHRISTIANSON, GRIMSON and BURKE, JJ., concur.