UNITED STATES of America,
Plaintiff-Appellee,

v.

Lowell G. ANDERSON,
Defendant-Appellant.

No. 76–1730.

United States Court of Appeals,
Tenth Circuit.

Sept. 28, 1978.

**370**

Lowell G. Anderson, pro se.

Robert A. Bernstein, Atty., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, William S. Estabrook and Mary L. Jennings, Attys., Dept. of Justice, Washington, D. C., James P. Castberg, U.S. Atty., Cheyenne, Wyo., of counsel, on brief), for plaintiff-appellee.

Before SETH, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.

HOLLOWAY, Circuit Judge.

This action was brought for collection of a balance of 1967 income taxes allegedly due from defendant Anderson in the amount of $1,639.18, plus interest and penalties. The suit was brought pursuant to 26 U.S.C. § 7401, with jurisdiction being invoked under 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. § 7402. After trial to the court, findings and conclusions adverse to the defendant were filed and judgment was entered in favor of the Government for $2,407.01, plus interest, and foreclosure of a tax lien on the liability.

Defendant appeals, arguing for reversal on the grounds that: (1) the trial court erred in denying him a trial by jury which he claims as his right under the Seventh Amendment; (2) the court erred in denying his request that the amount sued for be defined other than in dollars, the value of federal reserve notes being uncertain; (3) the court erred in refusing to suppress evidence obtained by an IRS employee by unlawful coercion, threats and intimidation; and (4) the judgment is contrary to the evidence and particularly to proof submitted by an affidavit in support of a motion for a new trial.

The 1967 tax controversy arose mainly over an increase in gain which the IRS said should be recognized from defendant Anderson's sale of a glass business to a corporation. The IRS assessment asserted that there was a larger benefit to Mr. Anderson through assumption of his indebtedness by the corporation than he stated. The IRS also disagreed with Mr. Anderson on his basis in some equipment and a building sold to the corporation, among other things.

As noted, the trial court denied a demand for trial by jury and the case was tried to the court. In written findings and conclusions the trial court found the following: The case arose from an audit of defendant's 1967 federal income tax return submitted after he sold a glass business while he resided in Kansas. Defendant filed an IRS form 1040 return for 1967 reporting a tax due of $2,987.00. In May 1969 an audit was made of that return. A recomputation was made from business and personal records, resulting in a deficiency assessed in the amount of $2,842.93, plus $170.10 interest. (See Govt. Ex. 3).

The court found that subsequent payments reduced the liability to $2,867.37, which was the amount set forth in a federal tax lien filed on January 7, 1970. The defendant continued to make monthly payments on the deficiency until March 20, 1972. Those payments are reflected on Government Exhibit 3, a "Certificate of Assessments and Payments," showing a balance due of $1,639.18 as of June 5, 1975. The court found that defendant failed to make further payments and that, with interest, a total of $2,407.91 was due on January 19, 1976, with interest continuing to accrue.

The trial court further found that defendant had been reluctant to release his records to the IRS examiner, maintaining that defendant was threatened and told that if he would release his records that no criminal charges or investigation would ensue, which contention was denied by the IRS agent. The court found that the testimony was not sufficient to constitute a preponderance of evidence in support of this contention, that there was no ability to carry out the threat, that all proper procedures had been followed by the IRS agent, and that his computations had not been controverted by any evidence.

The court concluded as a matter of law that defendant was not threatened when he surrendered his records, that his rights of privacy were not violated, and that he was not coerced into filing the form 1040 or relinquishing his records for audit. The court further concluded that defendant was indebted on the tax liability, and judgment was entered for the Government and against defendant Anderson for $2,407.91, with interest accruing thereon, and for foreclosure of the Government's tax lien.

## I

First, defendant Anderson claims error in the refusal of the trial court to grant his demand for a jury trial. The Government says that the trial court did not err because the demand was not made within the ten-day time limit provided by Rule 38(b), F.R. Civ.P., but does not address the merits of the jury-trial question.

The defendant's demand for jury trial was filed November 11, 1975. It did not specify particular issues which the defendant wished tried by a jury,[1] and thus had the effect of demanding trial by jury of all issues so triable. See Rule 38(c). The demand was denied by the trial court by an order entered on November 14, 1975, which stated that (I R. 19):

It appearing to the Court that the defendant is not entitled to a jury trial under the facts set forth in the complaint filed herein, NOW, THEREFORE, IT IS

ORDERED that the defendant's Demand for Jury Trial be, and the same is hereby, denied.

Thus the trial court did not deny the demand as untimely but instead did so on the merits of the demand by examining the facts set forth in the complaint. When the defendant renewed his jury demand by an objection just before the trial began, the court again rejected the demand as lacking in merit. The court stated that this was not the type of tax case in which a taxpayer is entitled to a jury trial.[2]

We feel that the trial judge was correct in considering the demand for jury trial on its merits and in not rejecting it as untimely. Rule 38(b) provides in part that:

. . . Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party.

In this case the Government's complaint alleged that an assessment of federal income tax, interest and penalties for the calendar year 1967 against defendant Anderson in the amount of $1,639.18 had been made, that defendant had failed and refus-

1. Defendant's demand for jury trial read in pertinent part as follows (I R. 16):

Comes now Defendant and pursuant to the United States Constitution DEMANDS A TRIAL BY JURY in the above titled action.

2. The defendant's objection and the court's response to it appear in the record just prior to the taking of evidence (III R. 5-6):

MR. ANDERSON: . . . Before we would get started into the trial, I would like to enter into the record, if I may do so, an objection to my denial of a jury trial. I believe that under the Seventh Amendment where the value of controversy exceeds $20, I have the right to a jury trial. I filed a motion and it was denied by the Court, I think, without a hearing. I believe that if we go back and study the early cases, we will find that tax is due under the provisions that was granted into the common law for a jury trial.

In fact, I think the Declaration of Independence states that *one of the grievances against King George was for depriving us of many cases of trial by a jury.* I believe in tax cases the person is entitled to a jury trial under the Seventh Amendment.

THE COURT: *There are certain types of tax cases in which a taxpayer is entitled to a jury trial.*

MR. ANDERSON: *Yes. I felt that this one fell under that category—*

THE COURT: *No.*

MR. ANDERSON: *—in that there is an issue of law rather than equity, and that I was entitled to a jury trial. I feel the Court doesn't have any jurisdiction to proceed without a jury trial, and I would like to enter that into the record.*

THE COURT: The record will so reflect. (Emphasis added).

ed to pay the assessment, and prayed for judgment therefor, costs and "such other and further relief as [the court] deems just and proper." (I R. 1–2).

The defendant filed a timely answer denying liability, including therein a counterclaim. The counterclaim alleged coercion, threats and intimidation by a delegate of the Secretary of the Treasury, as discussed earlier. The counterclaim also alleged that the defendant had paid an excess amount of tax of approximately $2,800 for the years 1965, 1966 and *1967* and that he had demanded a refund from the IRS on a claim form 843. Judgment was demanded against the Government, or the individuals responsible therefor, for the amount of $2,800 and for $150,000 of punitive damages in connection with averments of deprivation of constitutional rights. (I R. 5–6).

The Government did not reply to the counterclaim or any part of it but instead moved to dismiss the counterclaim "on the grounds of lack of jurisdiction and failure to state a claim upon which relief can be granted." (I R. 8). The supporting brief argued sovereign immunity and that the claim for refund was lacking in necessary allegations that the claim had been denied or not acted on for more than six months.

This motion to dismiss the counterclaim was filed on September 19, 1975. While it was pending, on November 11, 1975, the demand for jury trial was filed. On No-

vember 13 the court entered an order dismissing the counterclaim,[3] and then on November 14, the trial judge entered his order denying the demand for jury trial.

■■■ The Government contends that the defendant's answer and counterclaim were the "final pleadings" so that the demand was untimely. We do not agree. At the time the demand for trial by jury was filed by Mr. Anderson, his counterclaim was still pending. That counterclaim seeking a refund of income tax, among other things, included the issue of liability for 1967 income tax—the same issue raised by the Government's complaint. That issue thus remained in the pleading stage and there had not been a "last pleading directed to such issue"[4] so as to cause the 10-day time limit of Rule 38(b) to run against making a demand for jury trial. In such circumstances where the issue of 1967 tax liability continued as an issue, with no "last pleading" having been filed thereto at the time the demand for jury trial was made, the demand was timely. *Tights, Inc. v. Stanley*, 441 F.2d 336, 344 n. 21 (4th Cir.), cert. denied, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 91; *Monolith Portland Midwest Co. v. RFC*, 240 F.2d 444, 448 (9th Cir.), cert. denied, 354 U.S. 921, 77 S.Ct. 1379, 1 L.Ed.2d 1435; *Miller v. Poretsky*, 409 F.Supp. 837, 840 n. 4 (D.D.C.); *Binger v. Unger*, 7 F.R.D. 121, 122 (S.D.N.Y.).[5] We are satisfied the de-

**3.** The counterclaim was dismissed on the grounds that the refund claim was barred by limitations and that each cause of action alleged was barred by sovereign immunity. (I R. 10). Since the defendant has not raised any issue on appeal concerning the dismissal of the counterclaim, the merits of the claims therein need not be considered. However, the pendency of the counterclaim, and particularly the claim for refund for 1967 income taxes, at the time the demand for jury trial was made is of critical importance, as discussed later.

**4.** The motion of the Government to dismiss the counterclaim was not a pleading within the definitions used by the federal rules. Rule 7(a) defines pleadings as including a reply to a counterclaim, but none was filed. The motion does not constitute such a "last pleading," causing the 10-day time limit of Rule 38(b) to run. See *General Tire & Rubber Co. v. Watkins*, 331 F.2d 192, 195–96 (4th Cir.), cert. de-

nied, 377 U.S. 952, 84 S.Ct. 1629, 12 L.Ed.2d 498; *General Tire & Rubber v. Watson-Bowman Associates*, 74 F.R.D. 139, 140 n. 1 (D.Del.).

At the time the jury demand was filed, questions remained about the sufficiency of the counterclaim which were not ruled on by the trial court until its order of November 13 dismissing the counterclaim—two days after the demand for jury trial was filed.

**5.** There are cases which hold that jury trial demands filed within 10 days of service of a reply to a compulsory counterclaim are untimely with respect to the issues raised in the complaint and answer. See 5 Moore's Federal Practice ¶ 38.39[2], 316–18. We do not need to address those cases, however, since they apply only where the issues raised in the compulsory counterclaim are not the same factual issues as those raised in the complaint. Here the issue of 1967 tax liability raised in defendant's coun-

mand for a jury trial was timely and turn to the merits of the jury-trial question.

## II

The question is whether trial by jury may be had as a matter of right in an action brought by the Government for collection or recovery of taxes under 26 U.S.C. § 7401. As noted, the complaint alleged that an assessment of federal income tax due for 1967 by defendant Anderson had been made, that he failed and refused to pay the assessment, and judgment was sought against him for the amount assessed, for costs and "other and further relief as [the court] deems just and proper . . ." (I R. 1–2).

We are persuaded by the scholarly opinion of Judge Friendly in *Damsky v. Zavatt*, 289 F.2d 46 (2d Cir.)[6] to hold that there is a right to jury trial in such a case. See also *United States v. McMahan*, 569 F.2d 889, 891 (5th Cir.) (en banc); *Farmers-Peoples Bank v. United States*, 477 F.2d 752, 756–57 (6th Cir.). The right to trial by jury preserved by the Seventh Amendment is the right which existed under the English common law when the Amendment was adopted. *Baltimore & Carolina Line, Inc. v. Redman*, 295 U.S. 654, 657, 55 S.Ct. 890, 79 L.Ed. 1636.[7] Rule 38(a), F.R.Civ.P., provides that the right "as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." The Seventh Amendment question turns on the nature of the issue to be tried rather than the character of the overall action. *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729. And the inquiry involves considering the pre-merger custom, the remedy sought, and the practical abilities and limitations of juries. Id. at 538 n. 10, 90 S.Ct. 733.

The historical survey has been made in *Damsky* in convincing detail leading to the conclusion that:

Study of the history of the Court of Exchequer shows that, under the common law of England in 1791, an action by the Crown to recover a judgment for taxes was a suit at common law in which the right of jury trial existed . . .

\* \* \* \* \* \*

In summary, in 1791 an action of debt lay in England for the collection of taxes, such an action has always lain in the federal courts even apart from statute, and nothing in I.R.C. § 6502, providing that any seasonably assessed tax "may be collected by levy or by a proceeding in court," or in any other relevant statute, suggests that the "proceeding in court" was to be otherwise than the historic one. The claim against Bernard for his separate taxes is thus a suit at common law within the Seventh Amendment, for the right to jury trial exists in actions by the United States where it would in a similar action between private parties. (289 F.2d at 49, 51).

Thus the pre-merger history satisfies the first requirement of *Ross* to establish the right to trial by jury. Next, the remedy sought of a personal judgment for the tax assessed meets the second requirement. Lastly, the factual issue of the 1967 income tax liability of this defendant presents no difficulty for jury trial and is appropriate for jury resolution. *Farmers-Peoples Bank v. United States*, supra, 477 F.2d at 756–57.

In sum, we are persuaded that defendant Anderson's demand for a jury trial was timely. This action for collection of taxes comes within the Seventh Amendment, and the Code in no way attempts to curtail the

---

terclaim is the same as the issue presented by the complaint.

**6.** Our question involves only the holding of Part I of *Damsky* since this action as brought against Mr. Anderson sought a personal judgment against him alone for recovery of the 1967 income tax as assessed.

**7.** The Seventh Amendment provides:

In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

**374**

right. The defendant is therefore entitled to have the case tried to a jury.

While our conclusion on the jury-trial issue will require a new trial mooting some questions, we feel we should address one of the defendant's other appellate contentions. We will do so now because we are convinced that it is without merit and its disposition at this time will likely simplify in some measure the proceedings on remand.

### III

■■■ Defendant further claims that there was error in the trial court's refusal to grant his request that an amended complaint be filed stating the Government's claim in a value other than dollars. Defendant says that "dollars" have been withdrawn from circulation for all practical purposes and that the Government's federal reserve notes should be treated on a depreciated value basis.

These arguments are groundless and similar contentions along this line have been rejected as untenable. See *United States v. Gardiner*, 531 F.2d 953, 955 (9th Cir.); *United States v. Daly*, 481 F.2d 28, 30 (8th Cir.); *United States v. Wangrud*, 533 F.2d 495–96 (9th Cir.). Article I, section 8, clause 5 of the Constitution provides that Congress shall have the power "To coin Money, regulate the Value thereof, and of foreign Coin . . . ." As the Supreme Court stated in *Juilliard v. Greenman*, 110 U.S. 421, 448, 4 S.Ct. 122, 130, 28 L.Ed. 204:

> Under the power to borrow money on the credit of the United States, and to issue circulating notes for the money borrowed, its power to define the quality and force of those notes as currency is as broad as the like power over a metallic currency under the power to coin money and to regulate the value thereof. Under the two powers, taken together, congress is authorized to establish a national currency, either in coin or in paper, and to make that currency lawful money for all purposes, as regards the national government or private individuals.

Congress has exercised this power by means of delegation to the Federal Reserve

System, 12 U.S.C. § 411, and the definition of federal reserve notes as legal tender. 31 U.S.C. § 392; see *Milam v. United States*, 524 F.2d 629 (9th Cir.). There can therefore be no challenge to the legality of federal reserve notes. And we take judicial notice of the fact that federal reserve notes are valued in dollars.

Thus defendant's contentions on this issue are without merit and the trial court properly rejected them. The remaining contentions of defendant are mooted by our conclusion that the case should be remanded for a new trial.

Accordingly, the judgment is reversed and the case is remanded for further proceedings in accord with this opinion.