Byron L. DORGAN, Tax Commissioner,
State of North Dakota, Petitioner
and Appellee,

v.

Albert W. KOUBA, Respondent
and Appellant.

Civ. No. 9493.

Supreme Court of North Dakota.

Nov. 28, 1978.

Rehearing Denied Feb. 1, 1979.

Robert W. Wirtz, Sp. Asst. Atty. Gen., State Tax Dept., Bismarck, for petitioner and appellee.

Albert W. Kouba, pro se.

PEDERSON, Justice.

The district court granted the tax commissioner's petition for a writ of mandamus (§ 57–38–47, NDCC) and decreed that Albert W. Kouba, having received in excess of specified gross income in each of the taxable years, 1974, 1975 and 1976, was "required and directed to file a true and complete" return for each of those years (§§ 57–38–31 and 57–38–33, NDCC). Kouba appealed and the trial court granted a stay pending disposition of the appeal. We affirm.

In each of the years 1974, 1975 and 1976, Kouba filed the prescribed individual income tax Form 37. On the form he supplied the following information: his name and his wife's name, his home address and zip code, the amount of state income tax withheld, and the amount claimed as refund. Thereafter, the response to every item of information required on the form was "Object." Kouba thus objected to supplying his telephone number, whether he was single, whether he was a resident, iden-

tification of his school district, his occupation, the number of exemptions claimed, as well as every other item which, if responded to, would permit the computation of his tax liability.

He attached to Form 37 a copy of his wife's wage and tax statement (federal tax Form W-2), and a copy of federal Form 1040. Form 1040 also contained the response of "object" to every item of information upon which computation of tax liability could be based, except that the amount withheld and claimed as refund was the amount of federal income tax withheld. Also attached were affidavits, letters, memoranda, newspaper clippings, the Declaration of Independence, portions of the Constitution of the United States, and briefs of legal questions, all of which purportedly relate to or explain Kouba's objection to supplying information upon which his tax liability can be ascertained under the income tax law of North Dakota.

Kouba, who has represented himself throughout this entire proceeding, attempts to raise the following issues:

(1) That § 57–38–31, NDCC, is unconstitutional;

(2) That he has complied with the statutes requiring that a tax return be filed with the tax commissioner (§§ 57–38–31, 57–38–33, NDCC); and

(3) That he asserted on Form 37 a valid Fifth Amendment privilege and that he is prevented from claiming this privilege by the writ of mandamus.

The threshold question is whether § 57–38–31, NDCC, is constitutional. This section provides, in part:

"1. Every resident individual, every fiduciary for a resident individual, estate or trust, and every individual or fiduciary who receives income derived from sources in this state, who is required by the provisions of the United States Internal Revenue Code of 1954, as amended, to file a federal income tax return, shall file an income tax return with the state tax commissioner in such form as he may prescribe."

In *State v. Nichols,* 66 N.D. 355, 265 N.W. 859 (N.D.1935), our court held that the state income tax statutes do not violate the equal protection and the due process clauses of the federal and North Dakota constitutions. In upholding the inherent power of the legislature to enact tax laws, we said:

"The legislature must determine all questions of state necessity, discretion or policy involved in ordering a tax and in apportioning it; must make all the necessary rules and regulations which are to be observed in order to produce the desired returns, . . ." *State v. Nichols,* 265 N.W. at 863, *supra,* citing 1 Cooley on Taxation (4th Ed.).

A statute is conclusively presumed to be constitutional unless it is clearly shown that the statute contravenes the state or federal constitution. *Souris River Telephone Mutual Aid Corp. v. State,* 162 N.W.2d 685, 688 (N.D.1968). Kouba has not presented us with a sufficient reason for reconsidering our holding in *Nichols, supra,* and invalidating acts of the legislature which are presumptively enacted for the general welfare of the citizens of this state.

A jury trial is not mandatory under our constitution in an action to compel the filing of a tax return. Section 7, North Dakota Constitution. Our constitution preserves a trial by jury in "all cases in which it could have been demanded as a matter of right at common law." *In re R. Y.,* 189 N.W.2d 644, 651 (N.D.1971). An action for the collection of revenue was not recognized as a form of action at common law. *Wickwire v. Reinecke,* 275 U.S. 101, 105, 48 S.Ct. 43, 72 L.Ed. 184 (1927); *Olshausen v. C. I. R.,* 273 F.2d 23, 27 (9th Cir. 1960). Moreover, § 1–01–06, NDCC, provides that "[i]n this state there is no common law in any case where the law is declared by the code." It is only where "there is no express constitutional or statutory declaration upon the subject [that] the common law is applied." *McLaughlin Oil Co. v. First State Bank of Buffalo,* 79 N.D. 525, 57 N.W.2d 860, 864 (N.D.1953).

█ Section 57–38–47, NDCC, authorizes the district court to compel a taxpayer, by writ of mandamus, to file a proper return, if he has failed to do so. The payment of taxes is a quasi-public obligation imposed by the legislature upon each citizen who has earned a prescribed amount of income. Taxpayers' rights are protected by the procedural requirements of the statute. When a writ of mandamus is issued, a hearing must be provided to the taxpayer for the speediest possible determination of the case consistent with the rights of the parties. The procedure was correctly followed and Kouba had adequate notice and the opportunity to present his response to the petition made by the tax commissioner.

█ Kouba asserts that he filed a return in 1974, 1975 and 1976 and therefore the writ of mandamus was improperly issued by the district court. We do not agree.

Section 57–38–31, NDCC, provides that if income is taxable under federal law, the taxpayer *"shall file a return prescribed by the tax commissioner in such form as will permit computation of the tax liability."* [Emphasis added.] Section 57–38–33, NDCC, states in part:

"If the tax commissioner shall be of the opinion that any taxpayer has failed to file a return, or to include in a return filed, either intentionally or through error, items of taxable income, he may require from such taxpayer a return, or supplementary return, under oath, in such form as he shall prescribe, of all the items of income which the taxpayer received during the year for which the return is made, whether or not taxable under the provisions of this chapter." [1]

█ To permit a taxpayer to file a tax form upon which tax liability cannot be ascertained would frustrate the purpose of the statute. Filing a tax form is not synonymous with filing a tax return. A "return" is a tax form containing sufficient information from which the commissioner can determine tax liability. See *United States v. Porth,* 426 F.2d 519, 523 (10th Cir. 1970).

The district court properly issued the writ of mandamus.

Kouba next contends that filing a return "could possibly" deprive him of his privilege against self-incrimination under the Fifth and Fourteenth Amendments to the United States Constitution. Kouba states that he fears that the information supplied by him on his tax return would be accessible to government agencies for purposes of determining whether he had violated any of their regulations. While repeatedly stating that he has not committed any crimes, thus discounting any fear of self-incrimination, he solemnly avers that the constitutional privilege is for the innocent as well as the guilty.

█ The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." It is available to taxpayers on their returns. *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). Taxpayers are not considered "volunteers" when they file their returns because the "Government compels the filing of a return much as it compels . . . the appearance of a 'witness' before a grand jury." *Garner v. United States,* 424 U.S. 648, 652, 96 S.Ct. 1178, 1181, 47 L.Ed.2d 370 (1975).

Three questions must be considered before determining that a witness has invalidly exercised the privilege:

(1) Who decides whether a response would be incriminatory?

(2) By what standard is the question to be determined?

(3) Who bears the burden of making a factual record to show whether there has been a valid assertion of the privilege? See McCormick on Evidence, § 139 (2d Ed. 1972).

█ It is within the province of the court to determine whether or not a question may compel the witness to disclose incriminatory evidence. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95

1. See also § 57–38–56, NDCC, Powers of tax commissioner.

L.Ed. 1118 (1951). If the court determines that an answer of a witness may incriminate him, the witness is free to remain silent if he states, upon oath, that he cannot answer without incriminating himself. *United States v. Burr,* 25 F.Cas. 38, 40 (C.C.D.Va.1807) (No. 14692e).

■■■■ The standard upon which a valid assertion of the privilege is determined is whether the danger of incrimination is "real and appreciable."[2] *Marchetti v. United States,* 390 U.S. 39, 48, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). *In re Atterbury,* 316 F.2d 106, 108 (6 Cir. 1963). It must appear that the answer may disclose a "necessary and essential link" in the chain of testimony, sufficient to prosecute the taxpayer of a crime. *United States v. Burr, supra.*

> "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." *Hoffman v. United States,* 341 U.S. at 486, 71 S.Ct. at 818, *supra.*

The claim must be allowed unless it is " 'perfectly clear . . . that the witness is mistaken, and the answer[s] cannot possibly have such tendency' to incriminate." *Hoffman v. United States,* 341 U.S. at 488, 71 S.Ct. at 819, *supra,* citing *Temple v. Commonwealth,* 75 Va. 892, 898 (1881).

It is the response to the third question which poses a dilemma for a taxpayer. All of the questions on the tax form appear to be innocuous. Income tax returns are "neutral on their face and directed at the public at large." *Garner v. United States,* 424 U.S. at 660, 96 S.Ct. at 1186, *supra,* citing *Albertson v. SACB,* 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965). Questions relating to the location of a taxpayer's school district, whether he filed a joint or individual return, his marital status, and his telephone number are not per se incriminatory. After having considered the setting in which the questions on the tax form were asked, and the implications of these questions, we have no reason to believe that the remainder of the questions pose a danger of incrimination to Albert W. Kouba.[3]

The requirement of limited disclosure may present a "catch-22" situation for some taxpayers. He must make some showing that he will be incriminated in order to apprise the court of the circumstances upon which the privilege is based. If he asserts too much, however, the privilege is destroyed. Although we find no reason to sustain Kouba's position under the standards enunciated by this court and by the federal courts, we acknowledge that each case must be evaluated on its own merits. The United States Supreme Court has not, apparently, been afforded the opportunity to directly consider this question.

■■■ We hold that Kouba's assertion of his Fifth Amendment privilege is invalid. The possibility that agencies other than the tax department will obtain from Kouba's return information that will convict him of a crime is not a "real and appreciable" danger mandating Fifth Amendment protection. An unfounded suspicion that tax information may possibly provide a "link in

---

**2.** There are other standards utilized by the courts to determine if the claim of incrimination of the witness is valid. E. g., *California v. Byers,* 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (substantial hazards of incrimination); *Murphy v. Waterfront Comm'n,* 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964) (reasonable cause to apprehend danger); *McCarthy v. Arndstein,* 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1924) (substantial risk of incrimination). See *Internal Revenue Form 1040 and the Fifth Amendment: Self-Reporting or Self-Incrimination, The Taxpayers Dilemma,* 54 N.D.L.Rev. 213, 219 (1978).

**3.** If, in a writ of mandamus proceeding, a taxpayer who has claimed the privilege on his tax return is nevertheless required to furnish tax information, a grant of immunity would be available to him in a subsequent prosecution for a crime in which the State seeks to admit the tax return as evidence against him. The United States Supreme Court has held that, if a witness is protected by the Fifth Amendment but is "nevertheless compelled to answer, his answers are inadmissible against him in a later criminal prosecution." *Lefkowitz v. Turley,* 414 U.S. 70, 78, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973), citing *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), and *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). See also the provisions on immunity in § 31–01–09, NDCC.

the chain" of evidence to accuse Kouba of a crime is not sufficient reason to invoke the privilege.

■ Kouba states that had he been allowed to discuss Article I, Section 10, of the United States Constitution, he would have been able to show the constitutional invalidity of the entire monetary system. Article I, Section 10, provides in part:

"No State shall . . . make any Thing but gold and silver Coin a Tender in Payment of Debts; . . ."

We are not aware of any limitation of Kouba's right to present his case fully. We have considered all of the material which he has submitted. The trial court imposed no limitation upon his presentation. We are not convinced that the state tax department violates Article I, Section 10, by recognizing the monetary system established by Congress. It has been settled in federal cases that federal reserve notes are on an equal basis with other coins and currencies of the United States, and are legal tender for all debts, including taxes. *United States v. Wangrud*, 533 F.2d 495 (9th Cir. 1976), 31 U.S.C. § 392 (Supp.1976). It is settled that citizens must contribute to government expenditures through payment of taxes:

"Obviously, petitioner is opposed to the Government using tax proceeds to promote the economic welfare of other citizens. This seems to be his chief complaint. A taxpayer cannot, however, evade payment of his legal tax obligations on the basis of his dissatisfaction with the distribution of revenue. Congress alone is authorized to appropriate money to promote the general welfare and its determination within constitutional bounds is decisive. It.is the function of the courts to interpret the statutes so as to promote and effectuate the disclosed intent of Congress." *Crowe v. C.I.R.*, 396 F.2d 766, 767 (8th Cir. 1968).

We see no basis for this court to overrule the holdings of the above two cases.

■ The comprehensive material which Kouba attached to his income tax form raises objections to the federal reserve system, to government expenditures for abortions and other programs, to IRS internal procedures, and to the United States foreign aid programs. Objections to the programs for which taxes are being spent are more properly directed to Congress and the legislature through political channels.

We hold that North Dakota income tax laws are constitutional and that Kouba did not assert a valid Fifth Amendment privilege. We affirm the issuance of the writ of mandamus by the district court, directing Kouba to prepare and to file a complete return from which his tax liability can be ascertained.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, on petition for rehearing.

■ In his petition for rehearing Kouba asserts that he is entitled to a jury trial in the mandamus proceeding held to determine whether he filed a complete tax return, within the meaning of § 57–38–31, NDCC. This right to a jury trial does not automatically attach to every judicial proceeding. Rule 38(b), N.D.R.Civ.P., provides that:

"Any party may demand a trial by jury of any issue triable of right by jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue. Such demand may be indorsed upon a pleading of the party."

A party waives a jury trial if he does not make a timely demand. Rule 38(e), N.D.R. Civ.P.

■ Kouba demanded a jury trial in his Affidavit in Support of Motion to Dismiss. His demand for a jury trial was timely made in response to the tax department's petition for writ of mandamus.[1]

1. The district court may order a jury trial in a writ of mandamus proceeding pursuant to § 32–34–06, NDCC, provided there is a factual question raised affecting the substantial right of the parties.

Having made a proper demand, the question is whether Kouba has raised any issue of fact that would entitle him to a jury trial.

Kouba asserts that the citizen is guaranteed a jury trial in all tax matters. In support of this assertion, Kouba relies upon *United States v. Anderson*, 584 F.2d 369 (10th Cir. 1978), a case which had not been published when our opinion was prepared. That case involved the question whether the Seventh Amendment preserves a jury trial in an action brought by the government for the collection of revenue.[2] In *Anderson* the Tenth Circuit Court of Appeals noted that:

> "Study of the history of the Court of Exchequer shows that, under the common law of England in 1791, an action by the Crown to recover a judgment for taxes was a suit at common law in which the right of jury trial existed . . . ."
> *United States v. Anderson*, 584 F.2d at 373, *supra*, citing *Damsky v. Zavatt*, 289 F.2d 46 (2d Cir. 1961).

In *Anderson*, the court held that because an action to collect taxes was an action for debt at common law, the taxpayer's right to a jury trial was preserved by the Seventh Amendment. In reaching this conclusion, however, the court cautioned that the right to a jury trial afforded by the Seventh Amendment "turns on the nature of the issue to be tried rather than the character of the overall action." *United States v. Anderson*, 584 F.2d at 373, *supra*, citing *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970).

■ Here, the mandamus proceeding did not contain any issue of fact to be tried by a jury. This proceeding was held to determine whether Kouba filed a return from which his tax liability could be ascertained. This issue was for the court to decide as a matter of law. In addition, the

determination of the validity of Kouba's assertion of the Fifth Amendment on his tax form was for the court to decide as a matter of law.

In summary, because there was no factual issue for the jury, the petition for rehearing is denied.

---

2. The Seventh Amendment provides:
    "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."