NORMAN AND MARY BREHOB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brehob v. Commissioner
Docket No. 2132-79.
United States Tax Court
T.C. Memo 1981-358; 1981 Tax Ct. Memo LEXIS 383; 42 T.C.M. (CCH) 368; T.C.M. (RIA) 81358; July 13, 1981. Norman M. Brehob, pro se. F. Michael Kovach, Jr., for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Judge: Respondent determined a deficiency of $ 732.88 in petitioners' Federal income tax for the year 1975. The only issue presented for decision is whether checks received by petitioner Norman M. Brehob from the Chrysler Corporation for services rendered are taxable as income at their face value or at a reduced value based on the market price of gold in 1975. [1]
*384 All of the facts are stipulated and are so found. The pertinent facts are summarized below. Norman M. Brehob and Mary C. Brehob (petitioners) were husband and wife who resided in Chelsea, Michigan, when they filed their amended petition in this case. Petitioners filed a timely joint Federal income tax return for the taxable year 1975 on which wages received by Norman M. Brehob (petitioner) from the Chrysler Corporation were reported as income in the amount of $ 18,088.25. Petitioners also reported interest income of $ 523.84. The return was selected by respondent for audit and the petitioners were requested to substantiate their claimed deductions for contributions and medical expenses. On November 17, 1977, the petitioner wrote a letter to the Internal Revenue Service which reads as follows: As a result of your audit request regarding certain aspects of my 1975 income tax return, I have made a thorough review of matters related to my tax liability. This review has led me to conclude that I was in error in reporting my income, and as a result, incorrectly calculated the tax due. My error was due to my failure to recognize the following facts: 1. The Gold Standard *385 Act of March 14, 1900, specifies: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, that the dollar consisting of twenty-five and eight-tenths grains of gold nine-tenths fine, as established by section thirty-five hundred and eleven of the Revised Statutes of the United States, shall be the standard unit of value, and all forms of money issued or coined by the United States shall be maintained at a parity of value with this standard, and it shall be the duty of the Secretary of the Treasury to maintain such parity." 2. In 1934, by a Presidential Proclamation duly authorized by law and subsequently determined to be constitutional by the U.S. Supreme Court, the weight of the dollar was changed to "15 5/21 grains of gold nine-tenths fine", that is, to one thirty fifth of an ounce of pure gold. No other provision of the Gold Standard Act cited above was changed. 3. On March 31, 1972, legislation (S-3160) enacted by Congress was signed by the President. This further reduced the weight of the dollar to "one thirty-eighth of a fine troy ounce of gold," but did not otherwise modify the Gold Standard Act of 1900. 4. Congress *386 subsequently reduced the weight of the dollar further to "0.023684 of a fine troy ounce of gold." This also did not otherwise modify the Gold Standard Act of 1900. The foregoing makes clear that the statutory dollar (this is, the legal dollar I should have used in calculating my income tax) was 1/4222 ounce of gold. For convenience in the subsequent discussion, the symbol S$ is used to denote statutory dollars. Another pertinent fact is that during recent years, the U.S. Treasury apparently without the authority of any new legislation or Executive Order, has been substituting for the Federal Reserve Notes formerly issued, new notes from which the promise to pay a specified number of dollars on demand has been removed. Although these pieces of paper are boldly imprinted as dollars, they clearly are neither statutory dollars nor, by virtue of redeemability, the equivalent of such dollars. They seem best described as pseudo dollars, or paper dollars, for which the symbol P$ is here used. Having familiarized myself with the above facts, and making application of them to the computation of my 1975 income and the resultant tax due, I have determined that I should have converted *387 the pseudo dollars (P$ ) received as income to statutory dollars (S$ ) for income reporting, according to the relationship: S$ = P$ X 4222 / Market Price of Gold Hence, I have completed and attached an Amended Return for the year of 1975, including a schedule showing the conversion of pseudo dollars to statutory dollars for each increment of income received. An amended return for 1975 was filed by petitioners which reported the conversion of "pseudo" dollars to "statutory" dollars for income received. During 1975 the petitioner received checks from the Chrysler Corporation for his services and interest income was received in the form of passbook entries. No wages or interest income were received in the form of coins or currency. We reject the contention that the petitioner can "value" the salary checks he received from the Chrysler Corporation at a discounted specie value. When he cashed his salary checks he received in absolute terms the number of Federal Reserve notes corresponding to the face value of each salary check. That amount, without any diminution, must be included in his gross income under section 61(a)(1), Internal Revenue Code. Bothke *388 v. Commissioner, T.C. memo. 1980-1, on appeal (9th Cir., June 19, 1980). The courts have consistently upheld the constitutional taxability of Federal Reserve notes as income and always at their face value. See Hatfield v. Commissioner, 68 T.C. 895, 897 (1977); Sibla v. Commissioner, 68 t.c/. 422, 430-431 (1977), affd. without discussion of the issue 611 F.2d 1260 (9th Cir. 1980); Gajewski v. Commissioner, 67 T.C. 181, 193-194 (1976), affd. without opinion 578 F.2d 1383 (8th Cir. 1978); Cupp v. Commissioner, 65 T.C. 68, 84 (1975), affd. without opinion 559 F.2d 1207 (3d Cir. 1977); Leitch v. Commissioner, T.C. Memo. 1979-75, on appeal (9th Cir., June 7, 1979). [2]
*389 To reflect the stipulations of the parties, decision will be entered under Rule 155. Footnotes
1. The parties have stipulated that the petitioners are entitled to deductions based on expenses for medicine and drugs of $ 223.69 and other medical expenses of $ 844.46 (both subject to the percentage limitations of section 213, I.R.C. 1954↩), and contributions of $ 2,309.50. These deductions can be given effect in the Rule 155 computations.
2. Arguments similar to those made by the petitioners have been uniformly rejected and variously characterized by the courts as "clearly spurious" in Hartman v. Switzer, 376 F. Supp. 486, 490 (W.D. Pa. 1974); as "frivolous" in United States v. Daly, 481 F.2d 28, 30 (8th Cir. 1973), cert. denied 414 U.S. 1064 (1973); as "without merit" in United States v. Schmitz, 542 F.2d 782, 785 (9th Cir. 1976); and as "groundless" in United States v. Anderson, 584 F.2d 369, 374↩ (10th Cir. 1978).