In re George David MARCHAND and Norma Jo Marchand, d/b/a George Marchand Farms, Debtors.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a George Marchand Farms, Defendants.

KANSAS CITY LIFE INSURANCE COMPANY, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a George Marchand Farms, Defendants.

The UNITED STATES of America, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a George Marchand Farms, Defendants.

MERCHANTS AND PLANTERS BANK OF NEWPORT, ARKANSAS, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a Marchand Farms, Defendants.

JOHN DEERE COMPANY, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a Marchand Farms, Defendants.

JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Plaintiff,

v.

George David MARCHAND and Norma Jo Marchand, d/b/a Marchand Farms, Defendants.

Bankruptcy Nos. BA 85–35F, CMS 85–1107, CMS 85–1124, CMS 86–248, CMS 86–323 and CMS 86–347.

United States Bankruptcy Court, E.D. Arkansas, N.D.

April 24, 1986.

Jack Sims, Little Rock, Ark., for debtor.

Lindsey J. Fairley, West Memphis, Ark., for Equitable Life Assur. Soc. of the U.S.

Phillip D. Hout, Newport, Ark., for Kansas City Life Ins. Co.

James Maurice Rogers, Little Rock, Ark., for John Deere Co.

Tim F. Watson, Newport, Ark., for Merchants & Planters Bank of Newport, Ark.

Stanley R. Langley, Jonesboro, Ark., for John Hancock Mut. Life Ins. Co.

Fletcher Jackson, Asst. U.S. Atty., Little Rock, Ark., for U.S.

## MEMORANDUM OPINION

ROBERT F. FUSSELL, Chief Judge.

### Background

On April 2, 1986 came before the Court the Motions for Relief from Stay, previously consolidated for hearing, filed in the above-captioned case by The Equitable Life Assurance Society of U.S. ("Equitable") in CMS 85–1107, by the United States of America ("USA") in CMS 86–248, by Merchants and Planters Bank of Newport, Arkansas, ("M & P Bank") in CMS 86–323, by John Deere Company ("John Deere") in CMS 86–347, and by Kansas City Life Insurance Co. ("Kansas City Life") in CMS 85–1124 in which Kansas City sets forth its alternative Motion for Dismissal of the case. Also before the Court for decision upon the April 2 hearing is the Motion of John Hancock Life Insurance Company ("John Hancock") requesting an order authorizing abandonment of certain real property owned by the debtors in Jackson County, Arkansas. With consent of the parties, the Court is treating the motion for abandonment as another Motion for Relief from the Stay.

In essence, it is the creditors' position that they should be granted relief from the automatic stay pursuant to 11 U.S.C. § 362(d) because (1) the debtors cannot provide adequate protection of the creditors' interests in the secured property and (2) the debtors have no equity in the property securing the debt owed and the property is not necessary for an effective reorganization.

Based upon the following findings of fact and conclusions of law, the Court shall grant the creditors their requested relief from the automatic stay.

### Findings of Fact and Conclusions of Law

The debtors, George David Marchand and Norma Jo Marchand, d/b/a George Marchand Farms, filed bankruptcy on March 29, 1985.

The motions for relief from stay by the six creditors in the above-captioned actions were filed from November 15, 1985 through March 12, 1986. Kansas City Life's alternative motion for dismissal of the case was filed November 21, 1985.

■ The debtors agree that there is no equity in the farm equipment for which relief is sought. John Deere, holds the first lien on six pieces of farm equipment and M & P Bank holder of the second lien on the six pieces seek relief from the stay as that particular equipment. On March 29, 1985, the date the bankruptcy was filed, the net indebtedness owed to John Deere on the six pieces of farm equipment on which John Deere holds the first lien was less than the fair market value of the property. Despite demand therefor, the debtors have made no payments to John Deere on that indebtedness since some time prior to the bankruptcy. Since the filing of the bankruptcy, the equipment has continued to depreciate and no payments have been made on the indebtedness owed. The fair market value has been less than the amount owed to John Deere at least since March, 1986. It is on this collateral that M & P Bank holds a second and junior lien, as partial security for the debtors' indebtedness to M & P Bank in an amount exceeding $200,000.00 M & P Bank also has security interest in the remainder of the debtors' farm equipment as well as on all growing crops and certain real property, for all of which M & P Bank seeks relief from the stay. It is undisputed that the value of all the debtors' farming equipment is $65,-000.00 and there is no equity therein. It is also undisputed that the debtors have no insurance on the farm equipment. The Court would require the equipment to be insured as a basic step to providing the secured creditors with adequate protection. The Court finds from the evidence that the debtors would have to make a cash outlay of approximately $4,000.00 in order to purchase such insurance.

The real property in question is composed of four tracts of farm land in Jackson and Independence Counties, Arkansas, with improvements thereon, upon which debtors continue to operate their farming business. Kansas City Life holds a first mortgage on Tract 1 which consists of 360 acres in Jackson County, Arkansas. Its fair market value is $280,000.00, according to Sam Penix, whose credible appraisal testimony is uncontested. The balance due on that mortgage as of February 12, 1986 was $215,204.90 with interest accruing at the rate of $53.15 per day.

Equitable Life has a first mortgage on Tract 2 which consists of 120 acres also in Jackson County, Arkansas. Its fair market value is $84,000.00. The balance due on M & P Bank's mortgage as of February 12, 1986 was $58,859.81 with interest accruing daily at the rate of $13.53.

John Hancock holds the first mortgage on Tract 3 which consists of 80 acres in Jackson County, Arkansas. Its fair market value is $62,000.00. The balance due as of March 20, 1986 was $68,436.27 with interest accruing daily at the rate of $16.50.

John Hancock also holds the first mortgage on Tract 4 which is in Independence County, Arkansas, consisting of 96 acres. Its fair market value is $67,648.00. The balance due on this first mortgage was $87,087.00 as of March 20, 1986 with interest accruing daily at the rate of $21.00.

The USA holds a second mortgage on all 4 tracts with a balance due as of April 2, 1986 of $307,908.68. Interest accrues daily on the second mortgage at the rate of $59.01.

M & P Bank has the third mortgage on all 4 tracts as well as security interest in all growing crops and the farm equipment. The balance due M & P Bank as of April 2, 1986 was $284,840.87, with interest accruing daily at the rate of $77.48.

As of the April 2, 1986 hearing, the aggregate secured debt owed to the creditors by the debtors pursuant to the aforementioned liens totalled approximately $1,000,000.00. The amount owed is undis-

puted. It is also undisputed that the fair market value of the real property is approximately $493,648.00. Therefore, the debtors have no equity in the property. According to Mr. Penix, appraiser for the debtor whom this Court credits on this point, the farm lands will hold their present value.

*Adequate Protection*

When indebtedness on the subject property significantly exceeds its fair market value, as is the case here in regard to both the real property and the personal property, the creditors have presented a prima facie basis for relief from the stay under § 362(d)(1). *In re Borchers*, 45 B.R. 69 (Bkrtcy.N.D.Iowa 1984). Thus, under 11 U.S.C. § 362(d)(1), the burden of proof is then shifted to the debtors to show they can provide adequate protection. 11 U.S.C. § 362(g).

While "adequate protection" is not defined in the Bankruptcy Code, § 361 illustrates several means of providing adequate protection:

When adequate protection is required under section 362, 363 or 364 of this title [11 USCS § 362, 363 or 364] of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title [11 USCS § 362], use, sale or lease under section 363 of this title [11 USCS § 363], or any grant of a lien under section 364 of this title [11 USCS § 364] results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title [11 USCS § 503(b)(1) ] as

an administrative expense, as will re-
sult in the realization by such entity of
the indubitable equivalent of such enti-
ty's interest in such property.

11 U.S.C. § 361. Thus, means of providing
adequate protection include periodic cash
payments, additional or replacement liens
or other relief that will result in the realiza-
tion by each entity seeking relief from the
stay of the "indubitable equivalent" of
"such entity's interest in such property."
11 U.S.C. § 361; *and see In re Western
Preferred Corp.*, 58 B.R. 201 (Bkrtcy.N.D.
Tex.1985). What comprises "adequate pro-
tection" is a factual issue which must be
determined on a case-by-case basis. *Ac-
cord, In re Martin*, 761 F.2d 472, 474 (8th
Cir.1985). The Court must decide whether
the debtors' adequate protection proposal
provides protection to the creditors "con-
sistent with the concept of indubitable
equivalence," i.e. the value of the creditors'
bargained-for rights, after taking into con-
sideration the value of the creditors' inter-
ests "and the risks associated with the
debtors' proposal." *Id.* at 477.

■ In this case, the evidence and facts
are clear that the debtors are incapable of
providing substitute liens, replacement
liens, additional liens or any other tangible
evidence of adequate protection. Rather,
the debtors propose to provide adequate
protection through periodic (yearly) pay-
ments totalling $97,303.67 annually to the
creditors to be paid through their proposed
plan of reorganization out of proceeds from
the continued operation of their farming
business.[1] However, the evidence does not
support the debtors' contention that such
payments are possible. The risks associat-
ed with their proposals include asking the

creditors to depend upon income from
farming operations that have shown losses
for the past five years and upon income
from two new sources of business for
which the debtors either have no expertise
or no history of success.

■ Based upon past yields and current
market values, the debtors have projected
incomes from their various farming opera-
tions as follows:[2]

| Crop | Projected Income |
| --- | --- |
| Rice | $121,766.00 |
| Milo | $ 19,514.88 |
| Soybeans | $ 13,653.20 |
| Total | $154,934.08 |

According to the credible testimony of
Jeff Spencer of the Jackson County ASC
office, the costs which would be expended
to make the above-listed incomes on rice,
milo and soybeans would be as follows:

| Crop | Expense |
| --- | --- |
| Rice | $55,500.00 |
| Milo | $ 5,900.00 |
| Soybeans | $ 4,500.00 |
| Total | $65,900.00 |

Therefore, the Court finds that the
projected income, including government
subsidies, from these three crops of $154,-
934.08 less the expenses thereon of $65,-
900.00 would leave a net profit for the rice,
milo and soybeans of $89,034.08.

■ The debtors also project net profits
off their hog operations of $23,973.00. The
Court does not credit the debtors' proof on
that figure. The evidence reveals that the
debtors have only been in the hog farming
operation for one year during which time
they had profits of only $15,000.00. The
Court is not persuaded by the debtors that

---

**1.** Generally, before the debtors are asked to
show how they intend to provide adequate pro-
tection, the Court must determine *what* is to be
protected in order to decide whether the pay-
ments proposed will in fact "adequately protect"
the creditors' interest. That issue is thoroughly
discussed in *In re American Mariner Industries,
Inc.*, 734 F.2d 426, 430 (9th Cir.1984) and *In re
Western Preferred Corp.*, 58 B.R. 201 (Bkrtcy.N.
D.Tex.1985). The Eighth Circuit has also dis-
cussed the concept of adequate protection in *In
re Martin*, 761 F.2d 472 (8th Cir.1985) ("a debt-
or, in structuring a proposal of adequate protec-

tion for a secured creditor, 'should as nearly as
possible under the circumstances provide the
creditor with the value of his bargained for
right' "). In this case that issue does not have to
be addressed inasmuch as the evidence reveals
that the debtors cannot even make the payments
that they propose as adequate protection.

**2.** These figures include anticipated payments
from the government for setting aside certain
acreage and not planting.

profits will increase. Therefore, the Court finds the projected net profit off the hog farming operations will be $15,000.00.

■ The debtors also include anticipated profits from two new sources of income in their proposal to provide adequate protection payments: wheat farming and catfish farms. The Court does not doubt the sincerity of the debtors in regard to their proposed efforts for catfish farming and for raising wheat. However, after hearing all the evidence, the Court finds that all of the figures for the new business are based upon pure speculation and hope. The debtors have never been in the catfish farming business, have not yet constructed any ponds that would be necessary, and have no contracts for the sale of the fish. Therefore, the Court concludes the debtors' estimated profits from the catfish farming business are too speculative to be considered as funds which would be available for adequate protection payments.

■ In regard to the debtors' proposal to plant a winter wheat crop, the debtors estimate a profit of $22,700.00. However, the Court finds that the debtors have no solid basis upon which to base that figure. The debtors have not been engaged in growing winter wheat in the recent past, if ever. Further, the Court credits the testimony of Mr. Spencer that his review of the records of farmers in the Jackson County area reveals that winter wheat crops have not been profitable for the past two or three years. The debtors provide no convincing evidence to refute that evidence or to show that they would be able to change that trend. Therefore, the Court finds that debtors would have no net profit from the winter wheat crop with which to contribute to funds necessary for adequate protection payments.

The evidence also reveals that the debtors have other cash on hand including $10,000.00 in their general farm account and $5,000.00 from the hog operations managed last year.

Further, the Court notes that the debtors have arranged to receive a one-year loan from Independence Federal Bank of $35,257.00 to help alleviate the cash flow problems anticipated initially with their proposed plan. The loan is secured by personal property owned by Mr. Marchand's sister and her husband. In exchange for that loan the debtors have agreed to give Mr. Marchand's sister a first lien on the 1986 crop and to repay Independence Federal Bank the $35,257.00 principal of the note plus interest of $4,000.25 by the end of one year.[3] The loan, then, is merely one more obligation and burden for the debtors.

In addition, based upon the evidence, the Court finds that the debtors' projected living expenses of $14,000.00 must be deducted from the anticipated farming profit in order to determine the proceeds that will be available to use for adequate protection payments.

■ In summary, after living expenses, the debtors will be left with a total of $101,033.83 the first year from which to make the proposed annual adequate protection payments of $97,303.67 to the creditors. The calculations are as follows:

Projected Net Annual Farming Income

| Rice, milo, soybeans | $89,034.08 |
| Hogs | $15,000.00 |
| Wheat crop | $ –0– |
| Fish farm | $ –0– |
| | $104,034.08 |

---

3. The interest is actually to be paid every six months.

Cash on Hand[4]

| | | |
|---|---|---|
| 1985 Hog Operations Bal. | $ 5,000.00 | |
| General Farm Account Bal. | $10,000.00 | |
| | | +15,000.00 |

| | | |
|---|---|---|
| Deductions 1st Year | | |
| Living Expenses | $14,000.00 | |
| Loan Interest | | |
| (Independence Federal) | 4,000.25 | |
| | | − 18,000.25 |

| | |
|---|---|
| Anticipated Funds for Adequate Protection Payments | $101,033.83 |
| Proposed Adequate Protection Payments | − 97,303.67 |
| Margin | $ 3,730.16 |

A "cushion" of less than $3,000.00 leaves too little room for unexpected expenses to ask the creditors to remain at risk for another whole year. The Court is more persuaded that the debtors' record of past operations which reflects farm operating losses for the last five years is the best indicator of the future. The Court concludes that the debtors have not met their burden of proving that they can provide adequate protection pursuant to § 362(d)(1).

Therefore, the Court concludes that the motions for relief from stay should be, and hereby are, granted.

Because the motions for relief from stay are granted pursuant to 11 U.S.C. § 362(d)(1) the Court does not need to address the issue of whether the creditors would have been also entitled to relief from the stay pursuant to § 362(d)(2) based upon the allegations that there is no equity in the property and that the property is not necessary to an effective reorganization.

In addition, because the Court has granted the motions for relief from stay, the alternative motion of Kansas City Life that the case be dismissed need not be addressed.

Orders in accordance with this Memorandum Opinion will be entered in the case and in each of the above-captioned adversary proceedings.

4. The proceeds from the anticipated loan from Independence Federal in the sum of $35,257.00 is not included since it would also have to be included in the deductions.