In Re William J. WALTON and Joyce D. Walton, Debtor(s).

Bankruptcy No. 87–00984.

United States Bankruptcy Court, N.D. Ohio, W.D.

July 8, 1987.

William J. and Joyce D. Walton, pro se.

John J. Hunter, Toledo, Ohio, for FLB.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on a Motion for Relief from Stay filed by Federal Land Bank of Louisville (hereinafter "F.L.B.") and Objections thereto by the Debtor in Possession (hereinafter "D–I–P"). This case was originally filed as a Chapter 12, but was converted to a Chapter 11 on June 30, 1987 at the request of the D–I–P. A Hearing was held on this mat-

ter, at which time F.L.B. and the D–I–P presented the evidence and arguments they wished the Court to consider in rendering its decision. The Court has reviewed the arguments presented, as well as the entire record in this case. Based on that review, and for the following reasons, the Court finds that F.L.B.'s Motion for Relief from Stay should be GRANTED.

## FACTS

While there are several parcels of real estate upon which the F.L.B. claims a security interest, this motion addresses itself to three mortgages, namely:

1) # 344506–10  Dated July 11, 1978 in the original amount of $850,000.00, this mortgage was payable in annual installments on April 1st. The last payment on this mortgage was April 1, 1985.
2) # 356324–50  Dated November 29, 1979 in the original amount of $213,000.00, this mortgage was payable in annual installments on April 1st. The last payment on this mortgage was April 1, 1985.
3) # 383849–50  Dated April 10, 1984 in the original amount of $700,000.00, this mortgage was payable in annual installments on August 1st. The last payment on this mortgage was August 13, 1985.

The testimony of the F.L.B. witness was that the current amount of principal and interest owed on these three mortgages, as of June 12, 1987, was $2,104,399.26 with per diem accrual at the rate of $764.70 per day.

The F.L.B. witness testified further that, in his opinion, the value of the real estate securing these mortgages was $1,417,-880.00.

The D–I–P contended that he had tendered to F.L.B. a document titled "Certified Promissory Money Note" in payment of his debt ("Exhibit A"). It is the D–I–P's contention that this promise to pay, when presented under the applicable Uniform Commercial Code provisions in Ohio, satisfied the debt inasmuch as when the F.L.B. made him the loans, it was in the form of federal reserve notes, which are themselves only promises to pay and not legal tender.

The D–I–P also contends that, this document was never presented to him for pay-

ment pursuant to the terms on its face and the applicable U.C.C. provisions. Therefore, he claims he is not responsible for interest, or attorney fees, due after the date of presentment, and in fact, may be relieved of the entire obligation owed to F.L.B.

## LAW

Before the question of lack of presentment is considered, the Court must first address whether or not this "Certified Promissory Money Note" document is indeed a valid payment in satisfaction of a debt.

There have been many assaults upon the monetary system established in the United States, typically gaining momentum during times of economic stress. This issue has been litigated many times before, and it appears, will continue to be litigated for the foreseeable future.

The Supreme Court of the United States in *Norman v. Baltimore & Ohio Railroad Company*, 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885 (1935) stated:

It is unnecessary to review the historic controversy as to the extent of this power, or again to go over the ground traversed by the Court in reaching the conclusion that the Congress may make treasury notes legal tender in payment of debts previously contracted, as well as of those subsequently contracted, whether that authority be exercised in course of war or in time of peace. *Legal Tender Cases (Knox v. Lee)* 12 Wall. 457, 20 L.Ed. 287; *Legal Tender Case (Juilliard v. Greenman)* 110 U.S. 421, 28 L.Ed. 204, 4 S.Ct. 122. We need only consider certain postulates upon which that conclusion rested.

The Constitution grants to the Congress power "To coin money, regulate the value thereof, and of foreign coin." Art. I § 8, ¶ 5. But the Court in the legal tender cases did not derive from that express grant alone the full authority of the Congress in relation to the currency. The Court found the source of that authority in all the related powers conferred upon the Congress and appro-

priate to achieve "the great objects for which the government was framed,"—"a national government, with sovereign powers." *M'Culloch v. Maryland,* 4 Wheat. 316, 404–407, 4 L.Ed. 579, 601, 602; *Legal Tender Cases (Knox v. Lee)* supra (12 Wall. 532, 536, 20 L.Ed. 306, 307); *Legal Tender Case (Juilliard v. Greenman)* supra (110 U.S. 438, 28 L.Ed. 211, 4 S.Ct. 132). The broad and comprehensive national authority over the subjects of revenue, finance and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several States, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power "to make all laws which shall be necessary and proper for carrying into execution" the other enumerated powers. *Legal Tender Case (Juilliard v. Greenman)* supra (110 U.S. 439, 440, 28 L.Ed. 211, 212, 4 S.Ct. 122).

The Constitution "was designed to provide the same currency, having a uniform legal value in all the States." It was for that reason that the power to regulate the value of money was conferred upon the Federal government, while the same power, as well as the power to emit bills of credit, was withdrawn from the States. The States cannot declare what shall be money, or regulate its value. Whatever power there is over the currency is vested in the Congress. *Legal Tender Cases (Knox v. Lee)* supra (12 Wall. 545, 20 L.Ed. 310). Another postulate of the decision in that case is that the Congress has power "to enact that the government's promises to pay money shall be, for the time being, equivalent in value to the representative of value determined by the coinage acts, or to multiples thereof." *Id.* p. 553. Or, as was stated in the *Juilliard Case, supra* (110 U.S. 447, 28 L.Ed. 214, 4 S.Ct. 122), the Congress is empowered "to issue the obligations of the United States in such form, and to impress upon them

such qualities as currency for the purchase of merchandise and the payment of debts, as accord with the usage of sovereign governments." The authority to impose requirements of uniformity and parity is an essential feature of this control of the currency. The Congress is authorized to provide "a sound and uniform currency for the country," and to "secure the benefit of it to the people by appropriate legislation." *Veazie Bank v. Fenno,* 8 Wall. 533, 549, 19 L.Ed. 482, 488.

More recently, the issue of the legitimacy of federal reserve notes has been considered by several Circuits.

The Fifth Circuit, in *United States v. Benson,* 592 F.2d 257 (5th Cir.1979) stated in a tax case:

> Benson's argument that Federal Reserve Notes do not constitute income for tax purposes is frivolous. Federal Reserve Notes are the common medium of exchange in all fiscal affairs of the nation. They are legal tender for taxes. 31 U.S.C. § 392 (1965); *Mathes v. Commissioner of Internal Revenue,* 576 F.2d 70, 71 (5th Cir.1978).

*See,* also the Sixth Circuit in *United States v. Whitesel,* 543 F.2d 1176 (6th Cir.1976).

The Tenth Circuit, in *United States v. Anderson,* 584 F.2d 369 (10th Cir.1978), held the following, as it relates to the legality of federal reserve notes:

> Article I, section 8, clause 5 of the Constitution provides that Congress shall have the power "To coin Money, regulate the Value thereof, and of foreign Coin ..." As the Supreme Court stated in *Juilliard v. Greenman,* 110 U.S. 421, 448, 4 S.Ct. 122, 130, 28 L.Ed. 204:
>
> > Under the power to borrow money on the credit of the United States, and to issue circulating notes for the money borrowed, its power to define the quality and force of those notes as currency is as broad as the like power over a metallic currency under the power to coin money and to regulate the value thereof. Under the two powers, taken together, Congress is authorized to establish a national currency, either in

coin or in paper, and to make that currency lawful money for all purposes, as regards the national government or private individuals.

Congress has exercised this power by means of delegation to the Federal Reserve System, 12 U.S.C. § 411, and the definition of federal reserve notes as legal tender. 31 U.S.C. § 392; see *Milam v. United States*, 524 F.2d 629 (9th Cir.). There can therefore be no challenge to the legality of federal reserve notes. And we take judicial notice of the fact that federal reserve notes are valued in dollars.

584 F.2d at 374.

The D–I–P stated that the F.L.B., "did not give me lawful money, they gave me a check." This Court has previously held in *In re Mauk* 56 B.R. 445, 448 (Bankr.N.D. Ohio 1985) that:

> "... a check is an authorized means by which to transfer an amount of federal reserve notes (the medium of exchange adopted by the United States), see Ohio Revised Code Section 1301.01(X), 1303.06, ..."

██ It would appear from the holdings in the previous cases that federal reserve notes are legal tender in the United States. The Court must next consider whether or not the F.L.B. is obligated to accept the document titled "Certified Promissory Money Note". It should be noted that the D–I–P had previously signed promissory notes with the mortgages. In essence, the D–I–P seeks to have this Court substitute this "Certified Promissory Money Note" for the prior promissory notes without the consent of the F.L.B. There is no requirement under the laws of the State of Ohio, or any other state, which can force such a substitution on an unwilling party. If such were the law, a debtor could perpetually "pay" obligations with mere promises of future payment. While the document sent to F.L.B. may arguably be the demand note it purports to be, it is commercially unreasonable to force the F.L.B. to accept it. The D–I–P has attempted to give another promise of payment in satisfaction of a prior promise of payment.

██ Conversely, the D–I–P has received, *and accepted*, a check, which this Court has held is an authorized means by which to transfer an amount of federal reserve notes. *In re Mauk*, 56 B.R. 445 (Bankr.N. D.Ohio 1985). The D–I–P has failed to make payments on the three promissory notes and mortgages, offering instead to substitute a new promise for the previously signed promissory notes. That offer was not accepted by the F.L.B., and they were under no legal obligation to do so. The "Certified Promissory Money Note" was not money, nor was it a commercially reasonable equivalent. Therefore, the Court having found that an invalid document was tendered, any issues raised by the D–I–P based on the lack of presentment are moot.

Therefore, it is the opinion of this Court that the debt of the D–I–P to F.L.B. has not been satisfied and is, in fact, still owed.

### RELIEF FROM STAY

The motion of F.L.B. is made pursuant to 11 U.S.C. § 362(d) and is to be granted unless among other things, the D–I–P can provide for adequate protection as defined in 11 U.S.C. § 361:

§ 361. Adequate protection

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title use, sale or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation

allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Upon examination, the D–I–P testified that the real estate which is the subject of the mortgages of F.L.B. is leased to his sons, and that he is to receive twenty (20) per cent of the gross earnings from the land. He also testified that he received the sum of Fifty thousand dollars ($50,000.00) this year as a lease payment for the year 1987, a figure arrived at after discussions between him and his sons. When asked how he would provide the sums necessary for adequate protection, he replied that he would have to talk to his sons about the money and see what they could do.

The Creditor seeking relief from the automatic stay has the burden of proof on the issue of the Debtor's equity or lack thereof in the collateral, with the Debtor having the burden of proof on all other issues, including adequate protection of the Creditor. *In re Hinton*, 30 B.R. 796 (M.D. Tenn.1983). *In re Timbers of Inwood Forest*, 793 F.2d 1380 (5th Cir.1986). If the source of adequate protection payments is uncertain, or overly speculative, the offer of payments is not the "indubitable equivalent" of the Creditor's bargained for rights. *In re Marchand*, 61 B.R. 81 (Bankr.E.D. Ark.1986). In the present case, the D–I–P has stated that he has only leasehold income in the amount of 20% of the property's gross revenues and he would be required to ask his sons for any additional amount of money needed to pay any adequate protection payments. This does not appear to be the indubitable equivalent of the Creditor's bargained for rights. The funds needed to provide the adequate protection payments are not within the D–I–P's control. Consequently, it must be concluded that the D–I–P cannot provide adequate protection payments as required under 11 U.S.C. § 361, on any basis which would lower the element of risk to the Creditor to an acceptable level. The Debtors having failed to meet their burden of proof as to adequate protection, the stay should be relieved.

Accordingly, the D–I–P having been unable to satisfy the Court that he would be able to fulfill the requirement for adequate protection in 11 U.S.C. § 361, either by periodic payments pursuant to 11 U.S.C. § 361(1) or by those methods found in 11 U.S.C. § 361(2) or (3), it is,

ORDERED that the Motion of the F.L.B. for Relief from Stay is GRANTED.

EXHIBIT A

