# United States Court of Appeals for the Federal Circuit

2009-1354


DAVID A. RICHARDSON,

Plaintiff-Appellant,

v.

STANLEY WORKS, INC.,

Defendant-Appellee.


Geoffrey S. Kercsmar, Kercsmar & Feltus, PLLC, of Scottsdale, Arizona, argued for plaintiff-appellant.

Bryan P. Collins, Pillsbury Winthrop Shaw Pittman LLP, of McLean, Virginia, argued for defendant-appellee. With him on the brief were Robert M. Fuhrer, and Kathy Peng.

Appealed from: United States District Court for the District of Arizona

Judge Neil V. Wake

# United States Court of Appeals for the Federal Circuit

2009-1354

DAVID A. RICHARDSON,

Plaintiff-Appellant,

v.

STANLEY WORKS, INC.,

Defendants-Appellee.

Appeal from the United States District Court for the District of Arizona in Case No. 08-CV-1040, Judge Neil V. Wake.

_____

DECIDED: March 9, 2010

_____

Before LOURIE and DYK, <u>Circuit Judges</u>, and KENDALL, <u>District Judge</u>.[*]

LOURIE, <u>Circuit Judge</u>.

David Richardson appeals from a final decision of the United States District Court for the District of Arizona. <u>Richardson v. Stanley Works, Inc.</u>, 610 F. Supp. 2d 1046 (D. Ariz. 2009). After a bench trial, the district court found that Stanley Works, Inc. ("Stanley") did not infringe U.S. Patent D507,167 ("the '167 patent"). Because the court correctly construed the claim at issue and correctly determined that the patent was not infringed, we affirm.

_____

[*] Honorable Virginia M. Kendall, District Judge, United States District Court for the Northern District of Illinois, sitting by designation.

BACKGROUND

Richardson owns the '167 patent, a design patent that claims the design for a multi-function carpentry tool that combines a conventional hammer with a stud climbing tool and a crowbar. The tool is known as the "Stepclaw." The only claim of the '167 patent claims the ornamental design of the tool as depicted in figures 1 and 2 of the patent:



FIG.1

FIG.2

Stanley manufactures and sells construction tools. In 2005, Stanley introduced into the U.S. market a product line of tools by the series name "Fubar." The Fubar is

sold in five different versions and is useful in carpentry, demolition, and construction work.  Stanley successfully applied for and obtained U.S. Patent D562,101 ("the '101 patent") on the basic Fubar design.  All five versions of the tool are built around that same basic Fubar design.  Figures 1 and 5 of the '101 patent are illustrative of the Fubar design:



**Figure 1**

**Figure 5**

On June 3, 2008, Richardson filed a complaint against Stanley in the district court for the District of Arizona alleging that the Fubar tools infringed his '167 patent.  In addition, Richardson alleged that Stanley was unfairly competing with him in the U.S. market.  In response to Richardson's complaint, Stanley first filed a motion to dismiss on September 10, 2008 and later filed an answer to the complaint on September 22, 2008.

On October 22, 2008, Richardson filed his request for a jury trial, which Stanley moved to strike as untimely under Federal Rule of Civil Procedure 38(b). In response, Richardson requested that a jury trial be granted under Rule 39(b). The district court granted Stanley's motion to strike and denied Richardson's Rule 39(b) motion. Richardson v. Stanley Works, Inc., No. CV-08-1040-PHX-NVW, 2009 WL 383554 (D. Ariz. Feb. 13, 2009). The court also granted Stanley's motion to dismiss Richardson's unfair competition claim. Richardson v. Stanley Works, Inc., No. CV-08-1040-PHX-NVW, 2008 WL 4838708 (D. Ariz. Nov. 06, 2008). On April 2, 2009, the court conducted a bench trial on Richardson's patent infringement claim and entered judgment of noninfringement in favor of Stanley. Richardson, 610 F. Supp. 2d at 1053. In its order, the court first distinguished, as part of its claim construction, the ornamental aspects from the functional aspects of Richardson's design and then determined that an ordinary observer, after discounting the functional elements of Richardson's design, would not be deceived into thinking that any of the Fubar tools were the same as Richardson's Stepclaw. Id. at 1050–1052. The court therefore concluded that the overall visual effect of the Fubar was not substantially similar to that of the Stepclaw, and that the '167 patent had not been infringed. Id. at 1053. Richardson timely appealed the court's rulings. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

A.    Claim Construction

Richardson argues that the district court's approach to evaluating infringement of a design patent was incorrect. Richardson primarily argues that the district court erred in its claim construction by separating the functional aspects of the design from the

ornamental ones, rather than considering the design as a whole. Richardson argues that our Egyptian Goddess decision requires that the patented design be compared in its entirety with the accused design, and that the comparison be made from the perspective of an ordinary observer. See Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc). A claim construction such as the one performed by the district court, Richardson argues, is necessary only for designs that contain "purely functional" elements. According to Richardson, a design element is purely functional only when the function encompassed by that element cannot be performed by any other design. Richardson contends that the overall design of the '167 patent is not dictated by the useful elements found in the tool, and that the functional parts of its design remain relevant to the scope of the patented claim.

We review claim construction de novo on appeal. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). We disagree with Richardson that the district court erred in its claim construction by separating the functional and ornamental aspects of the '167 patent design. In OddzOn, we affirmed a district court's claim construction wherein the court had carefully distinguished the ornamental features of the patented design from the overall "rocket-like" appearance of the design of a football-shaped foam ball with a tail and fin structure. OddzOn Prods., Inc. v. Just Toys, Inc., 122 F.3d 1396, 1405 (Fed. Cir. 1997). We held that "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent." Id.

The issue before us is not very different from that in OddzOn, and we are not persuaded by Richardson's argument that our holding in Egyptian Goddess mandates a

different result here. In <u>Egyptian Goddess</u>, we abandoned the point of novelty test for design patent infringement and held that the ordinary observer test should serve as the sole test for infringement. 543 F.3d at 679. Although we proposed that the preferable course ordinarily will be for a district court not to attempt to construe a design patent claim, <u>id.</u>, we also emphasized that there are a number of claim scope issues on which a court's guidance would be useful to the fact finder. <u>Id.</u> at 680. Among them, we specifically noted, is the distinction between the functional and ornamental aspects of a design. <u>Id.</u> (citing <u>OddzOn</u>, 122 F.3d at 1405).

The district court here properly factored out the functional aspects of Richardson's design as part of its claim construction. By definition, the patented design is for a multi-function tool that has several functional components, and we have made clear that a design patent, unlike a utility patent, limits protection to the ornamental design of the article. <u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186, 1188 (Fed. Cir. 1988) (citing 35 U.S.C. § 171). If the patented design is primarily functional rather than ornamental, the patent is invalid. <u>Id.</u> However, when the design also contains ornamental aspects, it is entitled to a design patent whose scope is limited to those aspects alone and does not extend to any functional elements of the claimed article. <u>See</u> <u>L.A. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("The elements of the design may indeed serve a utilitarian purpose, but it is the ornamental aspect that is the basis of the design patent.").

Richardson's multi-function tool comprises several elements that are driven purely by utility. As the district court noted, elements such as the handle, the hammer-head, the jaw, and the crowbar are dictated by their functional purpose. The jaw, for

example, has to be located on the opposite end of the hammer head such that the tool can be used as a step. The crowbar, by definition, needs to be on the end of the longer handle such that it can reach into narrow spaces. The handle has to be the longest arm of the tool to allow for maximum leverage. The hammer-head has to be flat on its end to effectively deliver force to the object being struck. As demonstrated by the prior art, those are purely functional elements whose utility has been known and used in the art for well over a century.

Richardson's argument that the court erred in separating out functional aspects of his design essentially is an argument for a claim scope that includes the utilitarian elements of his multi-function tool. We agree with the district court that it would indeed be improper to allow Richardson to do so. The '167 patent specifically claims "the ornamental design" for the multi-function tool shown in the drawings. See '167 patent, Cl. 1. A claim to a design containing numerous functional elements, such as here, necessarily mandates a narrow construction. Nothing in our en banc Egyptian Goddess opinion compels a different outcome.

We also reject Richardson's argument that the court did not include drawings from the patent in its claim construction. Richardson argues that it is the ordinary observer's perception of those drawings that is the controlling consideration under the Supreme Court's opinion in Gorham Manufacturing Company v. White, 81 U.S. 511 (1871). We agree with Richardson on the decisive importance of drawings in a design patent. We have recently stated that design patents are typically claimed according to their drawings, and claim construction must be adapted to a pictorial setting. Crocs, Inc. v. Int'l Trade Comm'n, No. 2008-1596, slip op. at 10 (Fed. Cir. Feb. 24, 2010).

However, we do not agree that the district court's claim construction necessarily excluded drawings of the '167 patent. The court's entire construction was based on what was "shown and described in the '167 patent." Richardson, 610 F. Supp. 2d at 1050. The court concluded its discussion by noting that the purpose of the claim construction was simply to highlight the ornamental aspects of Richardson's design. Id. Richardson fails to explain how a court could effectively construe design claims, where necessary, in a way other than by describing the features shown in the drawings. Richardson's proposition that the claim construction should comprise nothing more than the drawings is simply another way of arguing that the court erred by identifying the functional elements of the patented article, and is therefore unavailing. We find no error in the court's claim construction.

B.    Infringement

Richardson argues that the district court failed to analyze infringement of the '167 patent by Stanley's tools under an ordinary observer test. According to Richardson, had the court conducted a three-way comparison between the prior art, the patented design and the accused products, it would have found the accused product design to be substantially the same as the patented one.

Stanley responds that, having identified the ornamental aspects of Richardson's patented design, the court properly found that the only similarities between the patented Stepclaw and the accused Fubar tools were those of unprotectable functional elements. Stanley argues that when those utilitarian aspects are ignored, none of the accused Fubar products looks even remotely like Richardson's patented design.

We agree with the court's finding of noninfringement. Design patent infringement is a question of fact, which a patentee must prove by a preponderance of the evidence. L.A. Gear, 988 F.2d at 1124. In Egyptian Goddess, we held that "the 'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." 543 F.3d at 678. The patentee must establish that an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design. See id. at 681. In our recent Crocs decision, we set out in detail how an ordinary observer analysis could be conducted to determine infringement. See Crocs, slip op. at 11–15. In analyzing whether a design patent on footwear was infringed, noting the various differences that could be found between the two pieces of footwear in question, we compared their overall effect on the designs. Id. at 15. We looked to ornamental elements such as the curves in the design, the strap assembly, and the base portion of the footwear. Id. We concluded that both the claimed design and the accused designs contained those overall ornamental effects, thereby allowing for market confusion. Id.

The ordinary observer test similarly applies in cases where the patented design incorporates numerous functional elements. See Amini Innovation Corp. v. Anthony Cal., Inc., 439 F.3d 1365, 1372 (Fed. Cir. 2006) (holding that while it is proper to factor out the functional aspects of various design elements, that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison). In evaluating infringement, we determine whether "the deception that arises is a result of the similarities in the overall design, not of similarities in ornamental features in isolation." Amini Innovation, 439 F.3d at 1371.

We do not agree with Richardson that the district court failed to apply the ordinary observer test in finding no infringement. The court specifically concluded that "[f]rom the perspective of an ordinary observer familiar with the prior art, the overall visual effect of the Fubar is significantly different from the Stepclaw." Richardson, 610 F. Supp. 2d at 1052. It recited the significant differences between the ornamental features of the two designs but, in determining infringement, it mainly focused on whether an ordinary observer would be deceived into thinking that any of the Fubar designs were the same as Richardson's patented design. Id. We therefore find no error in the district court's approach. See Egyptian Goddess, 543 F.3d at 681 ("An ordinary observer, comparing the claimed and accused designs in light of the prior art, will attach importance to differences between the claimed design and the prior art depending on the overall effect of those differences on the design."); see also Int'l Seaway Trading Corp. v. Walgreens Corp., 589 F.3d 1233, 1243 (Fed. Cir. 2009) ("The mandated overall comparison is a comparison taking into account significant differences between the two designs, not minor or trivial differences that necessarily exist between any two designs that are not exact copies of one another.").

We also agree that, ignoring the functional elements of the tools, the two designs are indeed different. Each of the Fubar tools has a streamlined visual theme that runs throughout the design including elements such as a tapered hammer-head, a streamlined crow-bar, a triangular neck with rounded surfaces, and a smoothly contoured handled. In a side-by-side comparison with the '167 patent design, the overall effect of this streamlined theme makes the Fubar tools significantly different from Richardson's design. Overall, the accused products clearly have a more rounded

appearance and fewer blunt edges than the patented design. The court therefore was not clearly erroneous in concluding that the accused products embody an overall effect that cannot be found in the '167 patent design and hence cannot cause market confusion. See Egyptian Goddess, 543 F.3d at 681 (infringement cannot be found unless the accused product creates an appearance deceptively similar to the claimed design).

C.    Jury Demand

We lastly address Richardson's argument that the district court improperly denied Richardson's jury demand as untimely. The court found that at the time Richardson filed his jury demand, the pleadings were closed. Richardson, 2009 WL 383554, at *1. However, Richardson argues that at the time he filed his jury demand, a motion to dismiss was pending, and the Rule 38(b) clock did not start until the motion had been ruled upon by the court. Moreover, Richardson argues, the court had ample discretion to grant his jury demand under Rule 39(b), but refused to do so, improperly concluding that Richardson's inadvertence foreclosed any further analysis of the merits of his motion. Richardson contends that, under Ninth Circuit law, failure to file a jury demand based on a pending motion to dismiss does not bar the court from employing its discretion to allow a jury trial.

Stanley responds that its motion to dismiss was not a pleading and hence did not toll the 10-day deadline for Richardson to file a jury demand. Moreover, Stanley argues, the motion to dismiss was limited to state law claims and did not in any way affect Richardson's deadline for filing a jury demand for the patent infringement claims.

We agree with Stanley that the district court permissibly denied Richardson's motion for a jury trial. We apply regional circuit law to a trial court's procedural decisions that relate to issues not unique to our exclusive jurisdiction, including motions for a jury trial. See Transmatic, Inc. v. Gulton Indus., Inc., 53 F.3d 1270, 1278 (Fed. Cir. 1995). Under Ninth Circuit law, a trial court's determination of the timeliness of a demand for jury trial under Rule 38(b) is reviewed de novo. See Kulas v. Flores, 255 F.3d 780, 783 (9th Cir. 2001).

In examining that question, we "indulge every reasonable presumption against waiver" of the jury trial right. Cal. Scents v. Surco Prods., Inc., 406 F.3d 1102, 1108 (9th Cir. 2005). Rule 38(b) states that "a party may demand a jury trial by . . . serving the other parties with a written demand – which may be included in a pleading – no later than 10 days after the last pleading directed to the issue is served." Fed. R. Civ. P. 38(b).[1] The district court noted that Stanley's answer was the last pleading directed to any issue triable of right by a jury in this case. Richardson, 2009 WL 383554, at *1. Accordingly, the court concluded that Richardson's jury demand was untimely because he served it more than ten days after Stanley filed its answer. Id. The court held that the fact that a motion to dismiss was pending did not toll the time for Richardson to file a jury demand. Id.

Rule 7(a) lists the types of pleadings permissible in federal cases. Fed. R. Civ. P. 7(a). A motion to dismiss is not one of them. It is not a pleading directed to issues of fact triable by the jury. United States v. Anderson, 584 F.2d 369, 372 n.4 (10th Cir. 1978) (stating that a motion to dismiss is not a pleading within the federal rules).

---

[1] Effective December 1, 2009, Rule 38(b) has been amended to provide the parties fourteen days to make a demand for a jury trial.

Richardson cites no authority suggesting that such a motion could be considered otherwise in the application of Rule 38.[2] Richardson's proposed interpretation of the rule would indefinitely extend a party's deadline to make a jury demand until the court rules on all such pending motions. We see nothing in the federal rules that allows such a reading. We agree with the district court that Richardson's jury demand was untimely regardless of Stanley's pending motion.

The Ninth Circuit reviews a district court's decision to deny relief under Rule 39(b) for an abuse of discretion. See Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614, 621 (9th Cir. 1979). A district court's discretion in granting an untimely demand for a jury trial under rule 39(b) is narrow, and does not permit a court to grant relief when the failure to make a timely demand results from oversight or inadvertence. See Pacific Fisheries Corp. v. HIH Cas. & General Ins., Ltd., 239 F.3d 1000, 1002 (9th Cir. 2001) (citing Lewis v. Time Inc., 710 F.2d 549, 556–57 (9th Cir. 1983)). The Ninth Circuit mandates denial of an untimely request for a jury trial unless some cause beyond mere inadvertence is shown. Id.

Richardson argues that it presented more reason than mere inadvertence for its untimely motion. Once again, he contends that Stanley's motion to dismiss and subsequently filed answer in response to his complaint put him in a difficult position of determining when his jury demand was due, and eventually miscalculating his deadline for making the demand. Richardson therefore appears to argue that his delay was not

---

[2] Richardson cites Anderson to support his proposition that where a motion attacking the pleadings is filed, the last pleading for the purposes of starting the Rule 38(b) clock is not deemed filed until after the motion attacking the pleadings is decided. Anderson, 584 F.2d 369. Anderson does not address the situation presented here, wherein the defendant first filed a motion to dismiss and then filed an answer.

due to mere inadvertence, but rather due to a good faith mistake in determining the deadline under the federal rules.

We find Richardson's argument unpersuasive. Even if Richardson's failure to timely file a jury demand were considered to be a result of his good faith mistake as to the deadline in light of Stanley's motion to dismiss, such a mistake establishes no more than inadvertence under Ninth Circuit law. <u>Zivkovic v. S. Cal. Edison Co.</u>, 302 F.3d 1080, 1087 (9th Cir. 2002) ("[G]ood faith mistake as to the deadline for demanding a jury trial establishes no more than inadvertence, which is not a sufficient basis to grant relief from an untimely jury demand."). The district court properly refused to exercise its discretion in rejecting Richardson's Rule 39(b) request.

CONCLUSION

We have considered Richardson's remaining arguments and do not find them persuasive. Accordingly, the judgment of the district court is

<u>AFFIRMED</u>