# United States Court of Appeals for the Federal Circuit

---

**LANARD TOYS LIMITED,**
*Plaintiff-Appellant*

**v.**

**DOLGENCORP LLC, JA-RU, INC., TOYS "R" US-DELAWARE, INC.,**
*Defendants-Appellees*

---

2019-1781

---

Appeal from the United States District Court for the Middle District of Florida in No. 3:15-cv-00849-MMH-PDB, Judge Marcia Morales Howard.

---

Decided: May 14, 2020

---

RICHARD PAUL SYBERT, Gordon Rees Scully Mansukhani LLP, San Diego, CA, for plaintiff-appellant. Also represented by REID E. DAMMANN, Los Angeles, CA.

LEWIS ANTEN, Lewis Anten, PC, Encino, CA, for defendants-appellees. Also represented by FREDERICK D. PAGE, Holland & Knight LLP, Jacksonville, FL; ILENE PABIAN, Miami, FL.

---

Before LOURIE, MAYER, and WALLACH, *Circuit Judges.*

LOURIE, *Circuit Judge*.

Lanard Toys Limited ("Lanard") appeals from the decision of the United States District Court for the Middle District of Florida granting summary judgment in favor of Dolgencorp LLC, Ja-Ru, Inc., and Toys "R" Us–Delaware, Inc. (collectively, "Appellees") with respect to Lanard's claims for design patent infringement, copyright infringement, trade dress infringement, and statutory and common law unfair competition. *Lanard Toys Ltd. v. Toys "R" Us-Delaware, Inc.*, No. 3:15-cv-849-J-34PDB, 2019 WL 1304290 (M.D. Fla. Mar. 21, 2019) ("*Decision*"). For the reasons described below, we affirm.

BACKGROUND

Lanard makes and sells the "Lanard Chalk Pencil," which is a toy chalk holder designed to look like a pencil. Lanard owns Design Patent D671,167 (the "D167 patent"), which contains five figures showing a pencil-shaped chalk holder from different angles. The D167 patent claims: "The ornamental design for a chalk holder, as shown and described." Lanard also owns copyright Reg. VA 1-794-458 (the "'458 copyright") for a work entitled "Pencil/Chalk Holder." The relevant images are depicted below.

| Lanard Chalk Pencil | D167 patent (Fig. 1) | '458 copyright (first image) |
|---|---|---|
| | | |

In 2011, Lanard began selling the Lanard Chalk Pencil to Dolgencorp LLC ("Dolgencorp"), which is a national distributor.  In 2012, Lanard began selling the Lanard Chalk Pencil to Toys "R" Us–Delaware, Inc. ("TRU"), which was a large toy retailer with stores throughout the United States. All Lanard Chalk Pencils sold to Dolgencorp and TRU were marked to indicate Lanard's copyright and patent (or pending patent) protection.

In 2012, Ja-Ru, Inc. ("Ja-Ru") designed a toy chalk holder that looks like a pencil.

**Ja-Ru Product**



It is undisputed that Ja-Ru used the Lanard Chalk Pencil as a reference sample in designing its product.  In late 2013, Dolgencorp and TRU stopped ordering units of the Lanard Chalk Pencil and instead began ordering and selling the Ja-Ru product.

On March 27, 2014, Lanard filed suit in the United States District Court for the District of New Jersey against Dolgencorp, TRU, and Ja-Ru, J.A. 168–84, and the case was subsequently transferred to the Middle District of Florida, J.A. 1122–32.  Lanard's Second Amended Complaint, which is the operative complaint in the case, asserts four causes of action: (1) copyright infringement; (2) design patent infringement;  (3) trade dress infringement; and (4) statutory and common law unfair competition under federal and state law.  J.A. 1180–96.

The parties filed cross motions for summary judgment relating to all claims, and the district court granted Appellees' motion. *Decision*, 2019 WL 1304290, at \*28–29. Specifically, the court granted summary judgment that Ja-Ru's product does not infringe the D167 patent, that the '458 copyright is invalid and alternatively not infringed by Ja-Ru's product, that Ja-Ru's product does not infringe Lanard's trade dress, and that Lanard's unfair competition claims fail because its other claims fail. *Id.* at \*28. Lanard appealed, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of summary judgment according to the law of the regional circuit. *Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015) (citing *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1377 (Fed. Cir. 2014)). In the Eleventh Circuit, a grant of summary judgment is reviewed *de novo*, "construing the facts and all reasonable inferences from the facts in favor of the nonmoving party." *Stardust, 3007 LLC v. Brookhaven*, 899 F.3d 1164, 1170 (11th Cir. 2018) (citing *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015)). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## I

We begin, as the district court did, with Lanard's claim for design patent infringement. Determining whether a design patent has been infringed is a two-part test: (1) the court first construes the claim to determine its meaning and scope; (2) the fact finder then compares the properly construed claim to the accused design. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995). In comparing the patented and accused design, the "ordinary observer" test is applied—*i.e.*, infringement is found "[i]f,

in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871)). The infringement analysis must compare the accused product to the patented design, not to a commercial embodiment. *See Payless Shoesource, Inc. v. Reebok Int'l, Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *see also High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 642 (Fed. Cir. 2015) ("We have long-cautioned that it is generally improper to determine infringement by comparing an accused product with the patentee's purported commercial embodiment." (citing *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193, 1196 (Fed. Cir. 1995), *abrogated on other grounds by Egyptian Goddess*, 543 F.3d at 672–79)).

Lanard asserts three challenges against the district court's decision on design patent infringement. First, Lanard argues that the court erred in its claim construction by eliminating elements of the design based on functionality and lack of novelty. Second, Lanard argues that the court erred in its infringement analysis by conducting an element-by-element comparison rather than comparing the overall designs. Third, Lanard argues that the court used a rejected "point of novelty" test to evaluate infringement.

Appellees respond that the court properly construed the claims by relying on the drawings and also noting the ornamental and novel aspects of the design. Appellees argue that the court used the correct "ordinary observer" test to compare the overall appearance of the patented design with the Ja-Ru product. According to Appellees, the court properly considered how each element, particularly non-functional and novel elements, impacts the overall

appearance of the patented design.  For the following reasons, we agree with Appellees.

We review a district court's claim construction of a design patent *de novo*.  *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (citing *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015)).  Regarding claim construction, we have instructed trial courts that design patents "typically are claimed as shown in drawings," but that it can be helpful to "distinguish[] between those features of the claimed design that are ornamental and those that are purely functional."  *Egyptian Goddess*, 543 F.3d at 679–80 (citations omitted).  Indeed, we have made clear that "[w]here a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the non-functional aspects of the design as shown in the patent."  *Sport Dimension*, 820 F.3d at 1320 (quoting *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997)).

Here, the district court followed our claim construction directives to a tee.  The court began its claim construction analysis by reproducing the five exemplary figures from the patent and noting its reliance on those drawings.  *Decision*, 2019 WL 1304290, at *11.  Then, in an effort to clarify the scope of the protected subject matter, the court considered the functional features of the design, as well as the functional purpose of the writing utensil as a whole, including its proportions.  *Id.* (considering the functionality of the "conical tapered piece," "elongated body," "ferrule," "eraser," "the design's functional purpose as a writing utensil," "the general thickness of the design," and "the circular opening at the tapered end").  Although Lanard criticizes the court for allegedly "eliminating" entire elements of the claimed design, *see* Appellant Br. 32–38, on the contrary, the district court meticulously acknowledged the ornamental aspects of each functional element, including "the columnar shape of the eraser, the specific grooved

appearance of the ferrule, the smooth surface and straight taper of the conical piece, and the specific proportional size of these elements in relation to each other." *Decision,* 2019 WL 1304290, at \*12.  In light of our precedent regarding claim construction for design patents, we see no error in the approach taken by the district court to construe the claims commensurate with the statutory protection afforded to an ornamental design.

Next the district court considered our instruction that it is helpful to point out "various features of the claimed design as they relate to the accused design and the prior art." *Id.* at \*9 (quoting *Egyptian Goddess*, 543 F.3d at 680). Thus, the court considered the numerous prior art references cited by the examiner on the face of the D167 patent, as well as other designs identified by Appellees, all directed to the shape and design of a pencil.  The district court thus recognized that "the overall appearance of Lanard's design is distinct from this prior art only in the precise proportions of its various elements in relation to each other, the size and ornamentation of the ferrule, and the particular size and shape of the conical tapered end." *Id.* at \*12.  In so doing, the district court fleshed out and rejected Lanard's attempt to distinguish its patent from the prior art by importing the "the chalk holder function of its design" into the construction of the claim. *Id.* at \*13.  Again, we see no error in the district court's approach to claim construction.

Finally, having construed the claim consistent with the drawings and pointed out the ornamental and functional features of the design as well as the various features as they relate to the prior art, the district court proceeded to the question of infringement.  The court applied the well-established "ordinary observer" test to compare the overall design and appearance of the claimed design with that of the accused Ja-Ru product. *Id.* at \*15–18.  The court began by placing the patented design side-by-side with the Ja-Ru product and noting that they "share a broad design concept—they are both chalk holders designed to look like a

no. 2 pencil." *Id.* But, importantly, the court noted that "[t]he problem for Lanard, however, is that the design similarities stem from aspects of the design that are either functional or well-established in the prior art." *Id.* at *18. Thus, the court found that "the attention of the ordinary observer 'will be drawn to those aspects of the claimed design that differ from the prior art,'" *id.* (quoting *Egyptian Goddess,* 543 F.3d at 676), which would cause "the distinctions between the patented and accused designs [to be] readily apparent," *id.* at *16. The court concluded, based on the evidence presented, that no reasonable fact finder could find that an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design. *Id.* at *17 (citing *Egyptian Goddess*, 543 F.3d at 682).

Lanard insists that the district court made two errors in its infringement analysis. First, Lanard argues that the court conducted an element-by-element comparison "in lieu of" a comparison of the overall design and appearance of the claimed design and the Ja-Ru product. *See* Appellant Br. 38. Second, Lanard argues that the court revived the "point of novelty" test that we have rejected. *See* Appellant Br. 43. We disagree with both contentions.

To be clear, the "ordinary observer" test for design patent infringement requires the fact finder to "compar[e] similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010)). But, while the "ordinary observer" test is not an element-by-element comparison, it also does not ignore the reality that designs can, and often do, have both functional and ornamental aspects. *See Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006) ("The trial court is correct to factor out the functional aspects of various design

elements, but that discounting of functional elements must not convert the overall infringement test to an element-by-element comparison."). Under the "ordinary observer" test, a court must consider the ornamental features and analyze how they impact the overall design. *See Richardson*, 597 F.3d at 1295 ("We looked to ornamental elements . . . [and w]e concluded that both the claimed design and the accused designs contained those overall ornamental effects, thereby allowing for market confusion." (citing *Crocs*, 598 F.3d at 1303–07)). That is what the district court did in this case.

In comparing the overall design of the patent with the overall design of the Ja-Ra product, the court necessarily considered how the ornamental differences in each element would impact the ordinary observer's perception of the overall designs. *Decision*, 2019 WL 1304290, at *15–16. Indeed, the court expressly considered Lanard's argument that the differences were "inconsequential" to the overall designs, but the court rejected that argument for failure to properly place the ornamental aspects of the design in the proper context. *Id.* at *16. The court refocused its analysis on the correct context—the impact of the ornamental differences on the overall design—and concluded that "the differences between the patented and accused design take on greater significance." *Id.* We conclude that the district court struck the correct balance of considering the ornamental aspects of the design while remaining focused on how an ordinary observer would view the overall design. *See Richardson*, 597 F.3d at 1295 ("[The court] recited the significant differences between the ornamental features of the two designs but, in determining infringement, it mainly focused on whether an ordinary observer would be deceived into thinking that any of the [accused] designs were the same as [the] patented design.").

We also disagree with Lanard's contention that the court reinstated the "point of novelty" test in its infringement analysis. *See* Appellant Br. 43–46. It is true that we have rejected the notion that the "point of novelty" test is a

free-standing test for design patent infringement in which the patent owner must prove that the similarities between the patented design and the infringing product are attributable to "the novelty which distinguishes the patented device from the prior art." *Egyptian Goddess*, 543 F.3d at 671 (quoting *Litton Sys., Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)). But we have never questioned the importance of considering the patented design and the accused design in the context of the prior art. Indeed, we stated unequivocally that:

> [T]he ordinary observer is deemed to view the differences between the patented design and the accused product in the context of the prior art. When the differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. And when the claimed design is close to the prior art designs, small differences between the accused design and the claimed design are likely to be important to the eye of the hypothetical ordinary observer.

*Id.* at 676.

Here, as a matter of claim construction, the district court undoubtedly considered the points of novelty of the patented design over the prior art. *Decision*, 2019 WL 1304290, at *12–13. And the court placed those points of novelty in context by considering that those points of novelty would draw "the attention of the ordinary observer." *Id.* at *15–16. Again, we conclude that the district court correctly balanced the need to consider the points of novelty while remaining focused on how an ordinary observer would view the overall design. *See Egyptian Goddess*, 543 F.3d at 676.

Lastly, we deliberately disregard Lanard's seeming attempt to side-track the infringement analysis by

emphasizing similarities between its *product*—the Lanard Chalk Pencil—and the Ja-Ru product.   The test for infringement requires that "an accused design be compared to the claimed design, not to a commercial embodiment." *Payless*, 998 F.2d at 990.   To the extent that the Lanard Chalk Pencil embodies features that are not claimed in its D167 patent, features that are purely functional, or features that are in the prior art, those features are not themselves entitled to patent protection.  *See id.* ("None of those cited features, however, is part of the claimed designs and thus they may not serve as a valid basis for comparison in a design patent infringement analysis.").

We ultimately conclude that Lanard's position is untenable because it seeks to exclude any chalk holder in the shape of a pencil and thus extend the scope of the D167 patent far beyond the statutorily protected "new, original and ornamental design."  35 U.S.C. § 171.  Lanard's appellate challenge emphasizes the district court's extensive discussions of design elements, ornamental aspects, and points of novelty, but fails to acknowledge the court's proper placement of those discussions in the context of its overall infringement analysis.  The district court's detailed analysis was supportive of its conclusion that an ordinary observer, taking into account the prior art, would not believe that the accused Ja-Ru product was the same as the patented design.  *See Decision*, 2019 WL 1304290, at \*17.   Thus, we hold that the district court correctly granted summary judgment of noninfringement.

## II

Next, we turn to Lanard's claim for copyright infringement.   To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *See Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).   The district court

found that, as a matter of law, Lanard cannot show that it owns a valid copyright, and alternatively, that Lanard cannot show that Appellees infringe any protectable aspect of that work.  For the following reasons, we agree with the district court that Lanard does not own a valid copyright, and, therefore, we need not reach the issue of infringement.

The Copyright Act of 1976 extends copyright protection to "original works of authorship fixed in any tangible medium," which includes "sculptural works."   17 U.S.C. § 102(a)(5).  The Copyright Act defines a "useful article" as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or convey information," and the statute states:

> [T]he design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

*Id*. § 101.  Importantly, however, the Copyright Act makes clear that "[i]n no case does copyright protection for an original work of authorship extend to any idea."  *Id*. § 102(b).

As the district court found, Lanard's '458 copyright for a "Pencil/Chalk Holder" has an intrinsic utilitarian function—storing and holding chalk and facilitating writing or drawing—which makes it a useful article under the Copyright Act.  *See Decision*, 2019 WL 1304290, at *21–23; 17 U.S.C. § 101.  Thus, as the district court noted, the pertinent question is whether the copyright incorporates features that are sufficiently "separable" from the utilitarian aspects of the article to be eligible for copyright protection.  *Decision*, 2019 WL 1304290, at *21 (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1008 (2017)).  In resolving that question, the court found that:

> [T]he pencil design does not merely encase or dis-
> guise the chalk holder, it <u>is</u> the chalk holder. When
> one imagines the pencil design as a separate work
> of sculptural art, one is merely picturing a replica
> of the chalk holder.

*Id.* at \*22 (emphasis in original). Based on that finding, the court concluded that the features of Lanard's copyright "are not capable of 'existing independently' as a work of art, and therefore, it is not protectable under copyright law." *Id.* (quoting *Star Athletica*, 137 S. Ct. at 1011).

Lanard argues that its '458 copyright is a cartoonish No. 2 pencil design that can be perceived as a sculptural work separate from its function as a chalk holder and would qualify as a protectable work on its own if imagined in another medium separate from its utility as a chalk holder. *See* Appellant Br. 49 (analogizing to the facts at issue in *Star Athletica*). Appellees respond that Lanard cannot identify any feature incorporated into the design of its copyright that is separate from the utilitarian chalk holder and that Lanard is merely attempting to assert copyright protection over the useful article itself.

We agree with Appellees. In attempting to identify separable features, "the feature cannot itself be a useful article." *Star Athletica*, 137 S. Ct. at 1010; *see also Progressive Lighting, Inc. v. Lowe's Home Ctrs., Inc.*, 549 F. App'x 913, 921 (11th Cir. 2013) ("[A]n entire useful article cannot receive copyright protection, no matter how many superfluous, aesthetic individual components it has."). Here, Lanard's '458 copyright is for the chalk holder itself, and Lanard's arguments in the district court and in this appeal merely confirm that it seeks protection for the dimensions and shape of the useful article itself. Because the chalk holder itself is not copyright protectable, Lanard cannot demonstrate that it holds a valid copyright.

Furthermore, the '458 copyright shows images that appear to be a pencil with the words "Chalk Pencil" on it, and

the copyright is titled "Pencil/Chalk Holder."  Based on that limited information, in conjunction with its arguments in the district court and this appeal, Lanard is essentially seeking to assert protection over any and all expressions of the idea of a pencil-shaped chalk holder.  But copyright protection does not extend to an "idea."  17 U.S.C. § 102(b).  For this additional reason, we conclude as a matter of law that Lanard does not own a valid copyright for a pencil-shaped chalk holder.  Thus, we hold that the district court correctly granted summary judgment in favor of Appellees on Lanard's claim for copyright infringement.

## III

We next turn to Lanard's claim for trade dress infringement.  To prevail on a claim for trade dress infringement, a plaintiff must prove three things: (1) that the trade dress of two products is confusingly similar; (2) that the features of the trade dress are primarily non-functional; and (3) that the trade dress has acquired secondary meaning.  *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 980–81 (11th Cir. 1983) (collecting cases).  "To establish secondary meaning the plaintiff must show that the primary significance of the product in the minds of the consuming public is not the product itself but the producer."  *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 857 n.7 (11th Cir. 1983) (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 118 (5th Cir. 1979), *cert. denied*, 444 U.S. 1016 (1980)).  The district court found that Lanard cannot provide sufficient evidence that the Lanard Chalk Pencil has acquired secondary meaning.

Lanard argues that the district court erred by limiting its secondary meaning analysis to end-users of the Lanard Chalk Pencil even though Lanard's actual customers are wholesalers and retail stores to whom Lanard's sales team promotes its products through direct communications, presentations, and pitches.  Lanard further contends that it sold a large number of units of the Lanard Chalk Pencil,

the only pencil-shaped chalk holder on the market, which should at least be sufficient to create a triable issue of fact regarding whether the wholesalers and retail stores associated the product—the Lanard Chalk Pencil—with its producer—Lanard.

Appellees respond that Lanard relied exclusively on Ja-Ru's copying and its own sales as evidence of secondary meaning, and the court found that the evidence "woefully fails" to show secondary meaning. Appellees insist that Lanard never presented evidence or argument that distinguished between end-users versus wholesalers and retail stores, nor evidence of efforts to promote its product through its sales force.

We agree with the district court that, based on the evidence in the record, no reasonable trier of fact could reach the conclusion that the Lanard Chalk Pencil has acquired secondary meaning. On appeal, Lanard merely emphasizes that it sold a lot of units of the Lanard Chalk Pencil through direct marketing to wholesalers and retail stores, but Lanard cites no evidence as to how those customers view its Lanard Chalk Pencil product. Essentially, regardless of the identity of Lanard's customers, Lanard has not identified evidence with which it could satisfy its burden to prove at trial that, when customers see the Lanard Chalk Pencil, their minds jump to the producer of the product rather than the product itself. *See Brooks Shoe*, 716 F.2d at 857 n.7. We conclude that, on this record, the district court correctly granted summary judgment in favor of Appellees on Lanard's claim for trade dress infringement.

## IV

Finally, we address Lanard's claims for statutory and common law unfair competition under state and federal law. The district court found that the unfair competition claims fail because they are based entirely on Lanard's infringement claims. On appeal, Lanard does not challenge that finding. *See* Appellant Br. 64–65 (arguing only that

"since none of Lanard's other claims should fail on summary judgment, the district court's grant of summary judgment . . . on the unfair competition claim should be reversed"). Thus, because we find that the district court correctly granted summary judgment in favor of Appellees on Lanard's other claims, we hold that the court also correctly granted summary judgment on the unfair competition claims.

## CONCLUSION

We have considered the parties' remaining arguments, but we find them unpersuasive. We conclude that the district court correctly granted summary judgment in favor of Appellees on Lanard's claims for design patent infringement, copyright infringement, trade dress infringement, and unfair competition. Accordingly, the judgment of the district court is affirmed.

## AFFIRMED